IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No. 4: 05-CV-55-FL(1)



FILED
MAY 0 6 2005
FRED L. BORCH III, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

| | | |
|---|---|---|
| PCS PHOSPHATE COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| NORFOLK SOUTHERN CORP. | ) | **(JURY TRIAL REQUESTED)** |
| AND NORFOLK SOUTHERN | ) | |
| RAILWAY COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff PCS Phosphate Company, Inc. ("PCS"), by its undersigned attorneys, alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff PCS is a Delaware corporation with its principal place of business near Aurora, North Carolina.

2. Defendant Norfolk Southern Corporation ("Norfolk Southern") is a Virginia corporation with its principal place of business in Norfolk, Virginia.

3. Defendant Norfolk Southern Railway Company ("NSRC") is a Virginia corporation with its principal place of business in Norfolk, Virginia, and is wholly owned and controlled by Defendant Norfolk Southern.

4. Defendants Norfolk Southern and NSRC are the successors in interest to the interests, rights, and liabilities of a former railroad company known during 1965 and 1966 as Norfolk Southern Railway Company ("Grantee Railroad Company").

1

Therefore, references in this Complaint to "the Defendants" shall include Defendants Norfolk Southern, NSRC, and Grantee Railroad Company.

5.    This Court has jurisdiction over this litigation pursuant to 28 U.S.C. § 1332. The amount in controversy in this action exceeds the statutory requirement of $75,000.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this District.

7.    The Defendants are subject to personal jurisdiction in North Carolina.

## NATURE OF THIS ACTION

8.    This action arises from the Defendants' breach of contractual obligations to relocate a portion of the Defendants' Rail Line between Phosphate Junction and Lee Creek (the "Lee Creek Rail Line"), the location of the PCS phosphate mining and processing facility near Aurora, North Carolina, and from the Defendants' retaliatory and baseless threats that they will abandon the only rail service to the Aurora Facility. The Defendants have thus forced PCS to relocate a portion of the rail line at its own expense, which PCS estimates will exceed $12.1 million. Because of the Defendants' unfair and deceptive trade practices, PCS is entitled to treble its damages and receive attorneys' fees.

## FACTUAL BACKGROUND

### *PCS Relies Upon the Lee Creek Rail Line to Serve Its Aurora Facility.*

9.      PCS owns and operates the largest integrated phosphate mining and processing plant in the world on an approximately 70,000 acre tract of land located near Aurora, North Carolina in Beaufort County (the "Aurora Facility").

10.      The Aurora Facility consists of mining and processing operations, which two companies – Texas Gulf Sulphur Company and North Carolina Phosphate Corporation ("NCPC") -- constructed and began operating in the mid-1960s. In 1985, Texas Gulf Sulphur Company and NCPC merged into Texasgulf, Inc.[1], and TGS thereby acquired, among other things, NCPC's real property interests. TGS changed its name to PCS in 1995 following Potash Corporation's acquisition of TGS in 1995.

11.      PCS currently employs more than 1,000 employees at the Aurora Facility in a region of the State of North Carolina that is economically depressed. PCS is the largest private employer in Beaufort County.

12.      The operations at the Aurora Facility have the capacity to produce 6 million tons of phosphate ore per year, and PCS has estimated that PCS land surrounding the Aurora Facility contains more than 350 million tons of phosphate ore. In addition to mining phosphate ore, the Aurora Facility produces an array of other products in eight separate processing facilities all located at the Aurora Facility.

---

[1] In 1972, Texas Gulf Sulphur Company became known as Texasgulf, Inc. References throughout this Complaint to TGS shall include Texas Gulf Sulphur Company and Texasgulf, Inc.

3

13.    From the mid-1960s to the present, the Aurora Facility has relied heavily on rail access for the inbound transportation of raw materials and for the outbound shipment of its products to the marketplace.  Currently, the Aurora Facility ships and receives by rail more than 2 million tons of raw materials and products annually, which, in 2004, cost PCS more than $31 million.  This does not account for the millions paid by third parties in rail freight charges.

### *TGS Negotiates Relocation Agreements with the Defendants.*

14.    In 1963, Grantee Railroad Company filed with the United States Interstate Commerce Commission (the "ICC") a Request for Authorization to construct and operate a rail line in Beaufort County, North Carolina to serve the requirements of the Aurora Facility.  On October 26, 1964, the ICC entered a Certificate and Order providing, among other things, that "[t]he present and future public convenience and necessity require construction and operation by the Norfolk Southern Railroad Company of a line of railroad in Beaufort County, N.C..."

15.    After obtaining ICC approval, the Defendants constructed the Lee Creek Rail Line between Phosphate Junction and Lee Creek.  The Defendants then began providing and have continuously provided rail transportation services to the Aurora Facility from approximately 1966 through the present pursuant to a series of Deeds of Easement.

16.    In 1965 and 1966, TGS negotiated five Deeds of Easement (the "Relocation Agreements"), over which the Defendants constructed the Lee Creek Rail Line.  The Relocation Agreements contain a series of covenants, whereby the

4

Defendants agreed, among other things, to relocate the rights of way and rail line constructed by the Defendants if PCS (formerly, TGS) or the other grantors of the Relocation Agreements (the "Easement Grantors") subsequently determined that the Lee Creek Rail Line interferes with the anticipated mining or processing operations at the Aurora Facility.

17. NCPC and Weyerhaeuser Company ("Weyerhaeuser") (collectively, the "June 29, 1965 Easement Grantors") granted to the Defendants two Deeds of Easement dated June 29, 1965 (collectively, the "June 29, 1965 Easements"), which provided for "a right of way and easement for railroad purposes" across property owned by the June 29, 1965 Easement Grantors. *See* Exhibits A and B.

18. The June 29, 1965 Easements include express covenants between the Parties, including Relocation Provisions, whereby:

> If, after ten (10) years from the date of this instrument, either Grantor determines that all or any part of said right of way and easement interferes with its anticipated mining or processing operations in the Beaufort County, North Carolina area, then said Grantor shall notify Grantee in writing of its desire that the right of way and track be moved, specifying in said notice the date on which it requires said track to be relocated which date shall not be less than one year from the date of said notice and designating in the notice a new location for the right of way and relocation of the said track, and Grantors shall provide Grantee with a right of way and easement over said new location **and Grantee at its expense shall relocate the said track on the said new right of way**; provided, however, that the new location for the right of way and relocation of said track shall be determined by engineering representatives of Grantors and Grantee and shall be over such land as will provide a track subgrade elevation between elevations nine feet and thirteen feet above mean sea

5

level, and be such land as will avoid excessive curvature, grade and distances for the relocated track.

*See* Exhibit A, at page 2 (emphasis added).

19.    In November, 1965, third parties Fred R. Alfred, Betty A. Alfred, and TGS (the "October 12, 1965 Easement Grantors") granted to the Defendants a Deed of Easement dated October 12, 1965 (the "October 12, 1965 Easement"), which provided for "a right of way and easement for railroad purposes" across property owned by the October 12, 1965 Easement Grantors. *See* Exhibit C.

20.    Like the June 29, 1965 Easements, the October 12, 1965 Easement included an express Relocation Provision that TGS may request that the Defendants relocate the rail line if TGS "determines that all or any part of said right of way and easement interferes with its anticipated mining or processing operations..." In the event that TGS provides "written notice indicating that [TGS] ... has elected to proceed with relocation . . . **[TGS] shall provide [the Defendants] with a 60 feet right of way and easement over said new location and [the Defendants], at [their] expense, shall within one year relocate the said track on the said new right of way**" (emphasis added).

21.    TGS and the Defendants entered into fourth and fifth Deeds of Easement dated April 15, 1966 (the "April 15, 1966 Easement") and May 3, 1966 (the "May 3, 1966 Easement"). *See* Exhibits D and E.

6

22.    The April 15, 1966 Easement and the May 3, 1966 Easement contain express Relocation Provisions that are virtually identical to the Relocation Provision in the October 12, 1965 Easement.

23.    Each of the Relocation Agreements was supported by valid consideration. The Parties to each of the Relocation Agreements executed the Relocation Agreements, had them notarized, and then recorded them with the Beaufort County Register of Deeds. The Defendants have never disputed the validity of the Relocation Agreements.

### PCS Determines That Relocation of the Lee Creek Rail Line Is Necessary for Continued Mining and Processing Operations at the Aurora Facility.

24.    As evidenced by the Relocation Agreements, PCS (formerly, TGS) and the Defendants have at all relevant times understood and agreed that the mining and processing operations at the Aurora Facility might require that a portion of the Lee Creek Rail Line be relocated.

25.    Since at least 1981, PCS maps and projections of future mining operations have contemplated that phosphate reserves located immediately below the current Lee Creek Rail Line would be mined.

26.    PCS' ability to mine particular locations at the Aurora Facility requires permits and approvals from various federal and state agencies. The permits that currently authorize PCS mining operations expressly authorize mining the phosphate reserves located below the Lee Creek Rail Line and in the surrounding areas.

7

27.     By 1999, PCS had begun conducting preliminary studies regarding the mining reserves that are accessible at the Aurora Facility. As a result of those studies, PCS concluded that the Lee Creek Rail Line will interfere with the mining operations at the Aurora Facility if the Line is not relocated by the middle of 2007. PCS also concluded that to complete the Relocation Project by early 2007 and thus to avoid interruption of PCS operations, it would be necessary to begin relocating the Lee Creek Rail Line by early 2005.

28.     In 2001, PCS conducted an exhaustive study to allow PCS to prepare the most cost-effective and technically sound proposal for relocating the Lee Creek Rail Line. PCS considered various alternatives for relocating the rail line. After holding meetings with the North Carolina Department of Transportation regarding an appropriate highway route, with Carolina Power & Light regarding power line relocation, and with representatives of the Defendants regarding rail line relocation, PCS arrived at a final relocation proposal, which PCS subsequently memorialized in engineering drawings.

29.     In 2002, during a meeting between representatives of the Defendants and representatives of PCS, the Defendants acknowledged that the Relocation Agreements were valid and that the financial responsibility to relocate the Lee Creek Railroad Line belonged to the Defendants.

30.     On November 20, 2003, PCS formally notified the Defendants that PCS was invoking the Relocation Agreements, and requested that the Defendants relocate

8

a portion of the Lee Creek Rail Line to specific locations identified in the engineering

drawings that PCS provided to the Defendants:

> PCS hereby notifies Norfolk Southern pursuant to the Relocation Agreements of its desire that the railroad track and right-of-way be moved to the locations specified in the enclosed engineering drawings. Such relocation must be initiated by mid-year 2005 and completed no later than mid-year 2007. In accordance with the Relocation Agreements, PCS shall grant Norfolk Southern a right-of-way and easement for the relocated track. Pursuant to the Relocation Agreements, Norfolk Southern shall complete the railroad relocation at its expense.

> PCS engineering representatives have determined the precise location for the new right-of-way and relocated track and are prepared to work with the engineering representatives of Norfolk Southern to review the plans.

*See* Exhibit F.

### *The Defendants Breach Their Obligations to Relocate the Lee Creek Line and Retaliate Against PCS by Threatening to Abandon the Line.*

31.    The Defendants have never disputed that relocation of the existing rail

line is required for PCS to continue its mining operations. The Defendants likewise

have not disputed that PCS proposal for the relocation of the Lee Creek Rail Line is

not feasible or is not the most cost-effective proposal for relocating the rail line.

Rather, in a March 13, 2003 letter to PCS, the Defendants represented that "the route

proposed by PCS Phosphate is in general terms acceptable to [the Defendants]." *See*

Exhibit G.

32.    Later, during a July 30, 2004 presentation the Defendants made to

representatives of PCS, the Defendants expressly acknowledged their relocation

obligations under the Relocation Agreements.

9

33. Nevertheless, the Defendants have failed to perform their undisputed contractual obligations. For example, following extensive correspondence and meetings regarding the Defendants' obligations to relocate the Lee Creek Rail Line, on December 16, 2004, the Defendants rejected PCS' request that a portion of the Lee Creek Rail Line be relocated at the Defendants' expense as required in the Relocation Agreements. In a letter dated December 16, 2004, the Defendants wrote as follows:

> As we discussed at our July and previous meetings, since alternative funding sources have been sought but cannot be found, Norfolk Southern now needs to know if PCS will fund the relocation project. Norfolk Southern cannot economically justify bearing the costs of the relocation project. There is no guarantee, and no apparent likelihood under current rates, traffic levels and traffic commitments, that Norfolk Southern could recover those costs.

*See* Exhibit H.

34. However, the Relocation Agreements do not permit the Defendants to avoid their obligations to relocate the Lee Creek Rail Line at their expense or to shift the expense of relocating the Lee Creek Rail Line to PCS or any third party.

35. On information and belief, at no time did PCS or TGS agree to bear any costs associated with relocating the rail lines at issue in the Relocation Agreements or to relinquish the right to enforce the Relocation Agreements.

36. The Defendants have not only failed to perform their contractual obligations, but also have threatened abandonment of the Lee Creek Rail Line. In their December 16, 2004 letter, the Defendants advised that if PCS would not agree to

fund the relocation, the Defendants would "begin to prepare an application to the STB to abandon the Lee Creek line." *See* Exhibit H.

37.     In a letter dated February 11, 2005, the Defendants again threatened to abandon the Lee Creek Rail Line:

> If PCS is not willing to fund the proposed track relocation and Norfolk Southern cannot economically justify the funding, then we must begin the abandonment process before the [STB]. Since the STB has exclusive jurisdiction over the abandonment of rail lines based on sufficiency of income, its actions will preempt any purported obligation that your company believes otherwise exists.

*See* Exhibit I.

38.     If the Defendants had acted upon their threats to attempt to abandon the Lee Creek Rail Line (they have not), and if their threats were legally supportable (they are not), PCS would be facing the prospect of operating the Aurora Facility without rail access, which would leave PCS without transportation for the shipment of more than 2 million tons of raw materials and products annually.

39.     On information and belief, the Defendants' abandonment threats were not genuine. Rather, on information and belief, the Defendants' threats were calculated simply to coerce PCS to waive its right to enforce the Relocation Agreements against the Defendants and thus bear the costs of relocating the Lee Creek Rail Line itself in spite of the Defendants' contractual obligations to bear such costs.

40.     The Defendants' abandonment threats likewise were unsupportable. Under federal law the Defendants cannot abandon the Lee Creek Rail Line

unilaterally because of the presence of a third party tenant shipper that currently operates on the line. Accordingly, the facts and circumstances that are relevant to the Defendants' threatened request for authorization to abandon the Lee Creek Rail Line do no support an order from the STB authorizing abandonment.

41. In any event, even if the Defendants were at some future date successful in obtaining an order from the STB allowing the Defendants to abandon the Lee Creek Rail Line – which right to abandon PCS vigorously disputes – such right of abandonment would not limit any right by PCS to pursue and obtain the legal remedies and monetary relief sought from the Defendants for any failure by the Defendants to perform their contractual obligations under the Relocation Agreements.

42. Thus, the Defendants' request that PCS bear some or all of the costs involved in relocating the Aurora Facility rail lines and their threats that they intend to abandon the Lee Creek Rail Line have no basis in law or in fact.

### PCS Begins Relocating the Lee Creek Rail Line to Mitigate Its Damages.

43. Because the Defendants have breached their contractual obligations, PCS has been forced to mitigate its damages by relocating a portion of the Lee Creek Rail Line at its own expense and to seek damages from the Defendants resulting from the Defendants' breach.

44. In particular, following the Defendants' rejection of PCS relocation request, PCS began the relocation project on its own in an effort to minimize any interruption to its business, which would cause it to suffer millions of dollars of additional damages.

12

45. As of April 15, 2005, PCS has incurred excavation expenses of $753,366 and engineering expenses of $348,041 for a total of more than $1.1 million. PCS expenses will continue to accrue through at least 2007, and PCS has estimated that its total expenses in connection with the Relocation Project will exceed $12.1 million.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

46. PCS incorporates by reference the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

47. The Easement Grantors and the Defendants entered into binding contracts, including five Relocation Agreements, whereby the Easement Grantors granted an easement and right of way for the Defendants to construct the Lee Creek Rail Line and provide railroad services.

48. In the five Relocation Agreements, the Defendants agreed, among other things, to relocate any rail lines they constructed upon a request by the Easement Grantors, and their successors in interest including PCS, upon their determination that relocating the easement, right of way, and the rail lines the Defendants constructed interfere with anticipated mining or processing operations at the Aurora Facility.

49. At the time the Defendants entered into the Relocation Agreements, the Defendants were aware that the Grantors and their successors in interest intended to operate mining and processing operations at the Aurora Facility and that such

13

operations required rail access, including the rail access provided pursuant to the Relocation Agreements.

50.     Accordingly, it was reasonably foreseeable to the Defendants at the time they entered into the Relocation Agreements that the Grantors and their successors in interest operating the Aurora Facility would suffer actual and consequential damages should the Defendants breach their obligations to relocate the Lee Creek Rail Line.

51.     The Relocation Agreements were supported by valuable consideration.

52.     The Relocation Agreements memorialized and accurately reflected a meeting of the minds between the Grantors and the Defendants.

53.     The Relocation Agreements inured to the benefit of PCS and PCS became entitled to enforce the Relocation Agreements upon PCS acquisition of the assets, rights, and interests in the real estate surrounding the Aurora Facility.

54.     The Defendants breached their contractual obligations under the Relocation Agreements by, among other actions, rejecting PCS request and by failing to perform in accordance with PCS' request that the easements, rights of way, and rail lines the Defendants had constructed be relocated in accordance with the applicable Relocation Provisions.

55.     As a direct and proximate cause of the Defendants' breach of the Relocation Agreements, PCS has been damaged and will continue to be damaged in an amount in excess of $12.1 million.

56.     PCS damages include without limitation all damages that were reasonably foreseeable to the Defendants, including the costs to PCS of relocating the

14

Lee Creek Rail Line and all lost profits suffered and to be suffered by PCS resulting from the Defendants' refusal to relocate the Lee Creek Rail Line required to be relocated under the Relocation Agreements, including PCS attorneys fees in connection with this litigation.

## SECOND CLAIM FOR RELIEF
### (Breach of Easement Covenants)

57.    PCS incorporates by reference the allegations contained in paragraphs 1 through 56 as if fully set forth herein.

58.    The Easement Grantors conveyed to the Defendants five Deeds of Easement, whereby the Defendants obtained certain interests in land and the Defendants acknowledged their obligations under covenants contained in the Deeds of Easement, which are discussed in more detail above and which are attached to the Complaint as Exhibits A through E.

59.    The Deeds of Easement contain covenants whereby the Defendants agreed, among other things, to relocate any rail lines they constructed upon a request by the Easement Grantors and/or their successors in interest, upon the Easement Grantors' (and/or their successors in interest) determination that relocating the easements, rights of way, and the rail lines the Defendants constructed interfere with anticipated mining or processing operations at the Aurora Facility.

60.    The obligations and covenants contained in the Deeds of Easement, including the Relocation Provisions, touch and concern the land.

61.    The Deeds of Easement were supported by valuable consideration.

15

62.    The Deeds of Easement and the covenants contained in the Deeds of Easement run with the land; that is, the covenants that the Defendants provided in the Deeds of Easement are enforceable by the Easement Grantors and their successors in interest, including PCS, and are enforceable against the Defendants and their successors in interest.

63.    The Defendants breached the covenants contained in the Deeds of Easement by, among other actions, rejecting PCS' request and by failing to perform in accordance with PCS' request that the easements, rights of way, and rail lines the Defendants had constructed be relocated in accordance with the applicable Relocation Provisions.

64.    As a direct and proximate cause of the Defendants' breach of the covenants contained in the Deeds of Easement, PCS has been damaged and will continue to be damaged in an amount in excess of $12.1 million.

65.    PCS' damages include without limitation all damages that were reasonably foreseeable to the Defendants, including the costs to PCS of relocating the Lee Creek Rail Line and all lost profits suffered and to be suffered by PCS resulting from the Defendants' refusal to relocate the rail lines required to be relocated by the covenants contained in the Deeds of Easement, including PCS' attorneys fees in connection with this litigation.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

66.     PCS incorporates by reference the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

67.     By forcing PCS to relocate the Lee Creek Rail Line in spite of the Defendants' contractual obligations to do so, the Defendants are accepting the benefits of services that PCS is providing. That is, the relocation of the Lee Creek Rail Line at PCS expense constitutes a benefit to the Defendants in excess of $12.1 million. In addition, following the relocation the Defendants will continue to enjoy revenues of millions of dollars annually from providing rail services to the Aurora Facility.

68.     The Defendants have injured PCS by taking positions inconsistent with their prior conduct, representations, and contractual obligations.

69.     As a direct and proximate result, PCS has been damaged in an amount in excess of $12.1 million.

## FOURTH CLAIM FOR RELIEF

### (Unfair and Deceptive Trade Practices)

70.     PCS incorporates by reference the allegations contained in paragraphs 1 through 69 as if fully set forth herein.

71.     As set forth above, the Defendants were contractually obligated to relocate the Lee Creek Rail Line upon PCS' determination that the current rail line interferes with its operations. The Defendants willfully breached such obligations and

17

retaliated against PCS' requests that the Defendants relocate the Lee Creek Rail Line by threatening PCS with abandonment of the Line. The Defendants' threats were misleading because the Defendants have no unilateral right to abandon the Line because of the presence of a third party tenant shipper that currently operates on the Line. The Defendants' retaliation was unfair and coercive in that it was calculated to pressure PCS into waiving its right to enforce the Relocation Agreements.

72.     At common law and pursuant to N.C. Gen. Stat. Section 75-1.1, the Defendants' actions set forth above constitute unfair and deceptive acts or practices in and affecting commerce, which have injured PCS.

73.     Accordingly, pursuant to the common law and N.C. Gen. Stat. Section 75-1.1, PCS is entitled to recover from the Defendants such damages as it may prove at trial in an amount exceeding $12.1 million and to have those damages trebled. PCS is also entitled to recover its reasonable attorneys' fees pursuant to N.C. Gen. Stat. Section 75-16.1.

**WHEREFORE**, PCS respectfully requests that the Court:

1.     Grant judgment in favor of PCS and against the Defendants;

2.     Award compensatory damages for the claims for relief set forth above in an amount to be determined at trial, including damages for lost profits and other consequential damages;

3.     Award treble damages and reasonable attorneys fees in accordance with N.C. Gen. Stat. Section 75-1.1 and 75-16.1;

18

4.   Grant a trial by jury as to all issues that may be so tried;

5.   Tax the costs of this action (including but not limited to PCS reasonable attorneys fees) against the Defendant; and

6.   Grant PCS such other and further relief as the Court may deem just and proper.

This the 6 day of May, 2005.

R. Bruce Thompson II
N.C. State Bar No. 21468
Charles E. Raynal, IV
N.C. State Bar No. 32310
PARKER, POE, ADAMS & BERNSTEIN L.L.P.
150 Fayetteville Street Mall, Suite 1400
Post Office Box 389
Raleigh, North Carolina 27602
Telephone:     (919) 828-0564
Facsimile:     (919) 834-4564

**Attorneys for Plaintiff PCS Phosphate, Inc.**

NORTH CAROLINA

BEAUFORT COUNTY

THIS DEED OF EASEMENT made this _29th_ day of June, 1965 by NORTH CAROLINA

PHOSPHATE CORPORATION, a corporation organized and existing under the laws

of the State of New York, and WEYERHAEUSER COMPANY, by and through its legally

constituted and appointed Attorney in Fact, Joseph C. Brown, Jr., whose

authority is more fully described hereafter, hereinafter collectively called

"Grantors", to NORFOLK SOUTHERN RAILWAY COMPANY, a corporation organized

and existing under the laws of the State of Virginia, hereinafter called

"Grantee";

W I T N E S S E T H, THAT,

WHEREAS, Grantors will grant to and Grantee will acquire an easement

for railroad purposes over the hereinafter described land which is owned in

fee by Grantors;

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) and other

good and valuable consideration paid by Grantee, the receipt of which is

hereby acknowledged, Grantors do hereby grant and convey unto Grantee, its

successors and assigns, a right of way and easement for railroad purposes

in, over and upon the following described land located in Beaufort County,

North Carolina, to-wit:



1. A sixty (60) foot easement consisting
   of Tract #1, Tract #2, and Tract #3
   as shown on sheet one of three of the
   plans entitled "Railroad Easement -
   N. C. Phosphate Corp., Weyerhaeuser
   Company to Norfolk Southern Railway
   Company", dated June 7, 1965, attached
   hereto and made a part hereof.

2. A sixty (60) foot easement consisting
   of Tract #4 as shown on sheet two of
   three of plans attached hereto and
   made a part hereof.

3. A sixty (60) foot easement consisting
   of Tract #5, Tract #6, and Tract #7
   as shown on sheet three of three of
   plans attached hereto and made a part
   hereof.

**518**

TO HAVE AND TO HOLD the aforesaid right of way and easement unto Grantee, its successors and assigns, for so long as said right of way and easement shall be used for railroad purposes and shall not be abandoned or relocated.

It is expressly understood and agreed by and between the parties hereto, as follows:

(1) If, after ten (10) years from the date of this instrument, either Grantor determines that all or any part of said right of way and easement interferes with its anticipated mining or processing operations in the Beaufort County, North Carolina area, then said Grantor shall notify Grantee in writing of its desire that the right of way and track be moved, specifying in said notice the date on which it requires said track to be relocated which date shall not be less than one year from the date of said notice and designating in the notice a new location for the right of way and relocation of the said track, and Grantors shall provide Grantee with a right of way and easement over said new location and Grantee at its expense shall relocate the said track on the said new right of way; provided, however, that the new location for the right of way and relocation of said track shall be determined by engineering representatives of Grantors and Grantee and shall be over such land as will provide a track subgrade elevation between elevation nine feet and thirteen feet above mean sea level, and be such land as will avoid excessive curvature, grade and distances for the relocated track.

(2) Upon and after execution of this instrument, the officers, agents and employees of Grantee shall have the right to enter upon and use the land above described for the purpose of constructing thereon and thereover railroad tracks and otherwise for railroad purposes including the right to do at any time such reasonable cutting, filling and grading as they may deem necessary provided, however, that if such use of or work on said land would impair or obstruct the present drainage of any area, Grantee will provide reasonable

Page two.

alternate drainage of such area.

(3) That if this easement or right of way be relocated or if the Grantee shall abandon the aforesaid land or right of way for railroad purposes and cease to use the same for such purposes, the Grantors and their respective successors and assigns shall be seized of their former estates therein and the aforesaid right of way and easement shall cease and determine. If a railroad track is placed on the right of way and easement and later removed and not replaced within one year, this shall be conclusively presumed to constitute an abandonment.

(4) The Grantors reserve the right to the use of said right of way for roads and drainage ditches, bridges, culverts, permanent and temporary logging facilities and for any and all purposes convenient or necessary for the conduct of their respective operations but said use shall not interfere with the purposes for which this easement was granted.

(5) Grantee will pay the actual damages to fences and growing crops on the above described land caused by the construction, operation, maintenance, inspection, rebuilding and removal of said railroad line and will repair the breakage caused to any bridge and any damage to any road due to heavy hauling to and from the right of way strip, if claim is made within sixty (60) days after such damages are sustained.

(6) The Grantors shall have the right at their expense to cross the right of way herein conveyed with pipeline or pipelines, drainage canals, road, utilities and electric power lines and other operations of the Grantors, provided such use shall not interfere with the purposes for which this easement was granted.

(7) The Grantee shall indemnify and save harmless the Grantors from any and all action, cause of action, suit, demand, claim, accident and cost arising out of, related to or in any manner connected with the construction, maintenance, operation, repair, replacement or use of the right of way and easement granted, or of the said railroad line and the fixtures or related

Page three.

facilities used in connection therewith, and which are based on any negligence or willful acts of commission of the Grantee, its agents, servants, employees or contractors.

(8)  The Grantors shall not be responsible for damage to the railroad line or other facilities of Grantee not resulting from the negligence or willful acts of commission of the Grantors, their agents, servants, employees or contractors.

(9)  Grantee shall re-build and re-locate, parallel to the railroad right of way or at a place mutually agreed upon, all logging roads and drainage facilities which will be impaired or rendered useless by construction of the railroad, such relocations of roads and drainage facilities to be of the same character and usefulness to the Grantors as now.

(10)  If the Grantee should use poisonous or injurious sprays on the vegetation, trees or other growing crops in the said right of way and the same shall retard or kill the trees or crops and reproduction of trees or crops outside the right of way, the Grantee shall be accountable to the Grantors for the market value of any trees or crops or replacement cost of such reproduction as of the age when so retarded or destroyed.

(11)  In the event that any leases, options, or other arrangements between the Grantors are terminated or exercised so that Grantor Weyerhaeuser Company ceases to hold a legal interest in any or all of the lands over which the easement herein granted lies, Grantor North Carolina Phosphate Corporation, its successors and assigns, shall thereafter as to those lands of Grantor Weyerhaeuser  C o m p a n y to which it acquires a legal interest be deemed to be the sole grantor of the rights granted by this easement and shall thereafter as to those lands be solely entitled to the rights reserved to the Grantors of this easement and solely subject to the obligations of the Grantors.

(12)  In the event that any leases, options or other arrangements between the Grantors are terminated or exercised so that Grantor North Carolina

Page four.

Phosphate Corporation ceases to hold a legal interest in any or all of the lands over which the easement herein granted lies, Grantor Weyerhaeuser Company, its successors and assigns, shall thereafter as to those lands of Grantor North Carolina Phosphate Corporation to which it acquires a legal interest be deemed to be the sole grantor of the rights granted by this easement and shall thereafter as to those lands be solely entitled to the rights reserved to the Grantors of this easement and solely subject to the obligations of the Grantors.

(13)  The right of way and easement herein conveyed by North Carolina Phosphate Corporation and Weyerhaeuser Company to Norfolk Southern Railway Company shall forthwith become subject to the lien of the First Mortgage of Norfolk Southern Railway Company to Manufacturers Hanover Trust Company, as Trustee, dated as of July 1, 1938 and recorded, among other places, with the Register of Deeds of Beaufort County in Book 343, page 83, and also to the lien of the General Mortgage and Deed of Trust of Norfolk Southern Railway Company to Chase Manhattan Bank, as Trustee, dated as of June 1, 1960, and recorded, among other places, with the Register of Deeds of Beaufort County in Book 513, page 127, and, also to the lien of the Second General Mortgage and Deed of Trust of Norfolk Southern Railway Company to United States Trust Company of New York, as Trustee, dated as of April 1, 1963 and recorded, among other places, with the Register of Deeds of Beaufort County, North Carolina, in Book 551, page 1.

(14)  Grantor Weyerhaeuser Company reserves for itself such timber on the said right of way as it wants with the understanding that Grantor Weyerhaeuser Company will cooperate with Grantee and get such timber as Grantor Weyerhaeuser Company wants from said right of way removed so as not to hinder the work of Grantee on said right of way.

(15)  Grantee agrees that no stumps or tops or debris from Grantee's work on said right of way will be left on the property of Grantors adjoining the right of way herein granted.

Page five.

522

(16)  This easement is executed by Weyerhaeuser Company by and through its legally constituted and appointed Attorney-in-Fact, Joseph C. Brown, Jr., whose power of attorney bears date of March 21, 1962, and is duly recorded in the Public Registry of Beaufort County in Book 535, page 5.

Grantors, for themselves, their successors and assigns, covenant to and with Grantee, its successors and assigns, that they are seized in fee simple of the above described land and have the right to grant the aforesaid right of way and easement, that the said land is free and clear from any and all encumbrances and that they will warrant and defend the grant of said right of way and easement against the lawful claims of all persons, whomsoever. Liability under this warranty shall be limited to the refund by the Grantors of the purchase price received per acre for any acreage lost.

IN WITNESS WHEREOF, North Carolina Phosphate Corporation has caused this instrument to be signed in its name by its President and its corporate seal to be hereunto affixed and attested by its Secretary, and Weyerhaeuser Company has caused this instrument to be signed in its name by its duly authorized Attorney-in-Fact, Joseph C. Brown, Jr., the day and year first above written; and Grantee, signifying its acceptance of and agreement to the conditions and reservations herein contained, has caused this instrument to be signed in its name by its President and its corporate seal to be hereunto affixed and attested by its Secretary, the day and year first above written.

NORTH CAROLINA PHOSPHATE CORPORATION

(Corporate Seal)

By _____
President

ATTEST:

_____
Secretary

WEYERHAEUSER COMPANY

By _____
Attorney-in-Fact

NORFOLK SOUTHERN RAILWAY COMPANY

(Corporate Seal)

By _____
President

ATTEST:

_____
Secretary

Page six.

STATE OF NEW YORK

COUNTY OF  NEW YORK

    I, _____HELEN WATERS_____, a Notary Public, certify that

_____MALCOLM R. WILKEY·_____ personally came before me this day and

acknowledged that he is Secretary of North Carolina Phosphate Corporation,

and that by authority duly given and as the act of the corporation, the

foregoing instrument was signed in its name by its President, HUGHES MAYO

_____, sealed with its corporate seal, and attested by himself

as its Secretary.

    WITNESS my hand and notarial seal, this _9th_ day of ~~June~~ *July* 1965.

                                         *Helen Waters*
                                              Notary Public

My commission expires:     HELEN WATERS
                      Notary Public, State of New York
                      No. 41-1167090
(N.P. Seal)             Qualified in New York County
              Commission Expires March 30, 1967

NORTH CAROLINA

~~BEAUFORT~~ *Martin* COUNTY

    I, _____Ilene S. Brown_____, a Notary Public of said County

and State, do hereby certify that Joseph C. Brown, Jr., whose name is signed

to the foregoing instrument as Attorney in Fact for Weyerhaeuser Company, has

this day acknowledged before me that the said instrument has been signed by

Weyerhaeuser Company by him as its duly authorized Attorney in Fact.

    WITNESS my hand and notarial seal, this _14th_ day of June, 1965.

                                       *Ilene S. Brown*
                                              Notary Public

My commission expires: *June 17, 1965*

(N.P. Seal)

NORTH CAROLINA

WAKE COUNTY

    I, Betty Daves, a Notary Public, certify that Goldie M. Lane personally

                            Page seven.

524



D. BARNETTE, EST.
MRS. ALICE BARNETTE

TEXAS GULF SULPHUR CO.
(F.R. ALFRED TRACT)

TEXAS GULF SULPHUR CO.
(FRED MOORE #1 TRACT)

S.J. MCWILLIAMS

STA. 215+26.26

Case 4:05

NORFOLK SOUTHERN RY. CO.
— RAILROAD EASEMENT —
N.C. PHOSPHATE CORPORATION)
WEYERHAEUSER COMPANY ) TO
NORFOLK SOUTHERN RY. CO.
Beaufort County, N.C.
Office of Chief Engr. - Raleigh, N.C.
SCALE: HORIZ. 1"=400'
VERT. 1"=200'                June 7, 1965
SHEET 1 OF 3





526

NORFOLK SOUTHERN RY CO.
— RAILROAD EASEMENT —

came before me this day and acknowledged that she is Secretary of Norfolk

Southern Railway Company, a corporation, and that by authority duly given

and as the act of the corporation, the foregoing instrument was signed in

its name by its President, Henry Oetjen, sealed with its corporate seal,

and attested by herself as its Secretary, for the purposes therein expressed.

WITNESS my hand and notarial seal, this _____ day of ~~June~~ 1965.

_____
Notary Public

My commission expires: February 11, 1967.

(N.P. Seal)

North Carolina    Beaufort County
The foregoing certificates of _Helen Waters_
Notary Public of _____ N. C. _Co. F____ S. _____
Notary Public of _Martin_ Co. and _Betty Dawes_
a Notary Public of _Wake_ Co. are adjudged to be
correct. Let inst. _____ the certificates be
registered.
Witness my hand this the __23__ day of _July_ 19 _65_

_Mina Ruffin_ Clerk Superior Court

Filed July 23, 1965, at 9:30 A. M.

John I. Morgan, Register of Deeds

Page eight.

**414**

NORTH CAROLINA

BEAUFORT COUNTY

THIS DEED OF EASEMENT made this _29th_ day of June, 1965, by NORTH CAROLINA PHOSPHATE CORPORATION, a corporation organized and existing under the laws of the State of New York, WEYERHAEUSER COMPANY, by and through its legally constituted and appointed Attorney in Fact, Joseph C. Brown, Jr., whose authority is more fully described hereafter, and/THE UNION CENTRAL LIFE INSURANCE COMPANY, a corporation organized and existing under the laws of the State of _____ Ohio _____, hereinafter collectively called "Grantors", to NORFOLK SOUTHERN RAILWAY COMPANY, a corporation organized and existing under the laws of the State of Virginia, hereinafter called "Grantee";

W I T N E S S E T H, THAT,

WHEREAS, Grantors will grant to and Grantee will acquire an easement for railroad purposes over the hereinafter described land which is owned in fee by Grantors;

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) and other good and valuable consideration paid by Grantee, the receipt of which is hereby acknowledged, Grantors do hereby grant and convey unto Grantee, its successors and assigns, a right of way and easement for railroad purposes in, over and upon the following described land located in Beaufort County, North Carolina, to-wit:



A seventy-five (75) foot easement as shown on plan entitled "Railroad Easement - Weyerhaeuser Company, N. C. Phosphate Corp., The Union Central Life Insurance to Norfolk Southern Railway Co.", dated June 7, 1965, attached hereto and made a part hereof.

TO HAVE AND TO HOLD the aforesaid right of way and easement unto Grantee, its successors and assigns, for so long as said right of way and easement shall be used for railroad purposes and shall not be abandoned or relocated.

It is expressly understood and agreed by and between the parties hereto, as follows:

(1) If, after ten (10) years from the date of this instrument, either Grantor determines that all or any part of said right of way and easement interferes with its anticipated mining or processing operations in the Beaufort County, North Carolina area, then said Grantor shall notify Grantee in writing of its desire that the right of way and track be moved, specifying in said notice the date on which it requires said track to be relocated which date shall not be less than one year from the date of said notice and designating in the notice a new location for the right of way and relocation of the said track, and Grantors shall provide Grantee with a right of way and easement over said new location and Grantee at its expense shall relocate the said track on the said new right of way; provided, however, that the new location for the right of way and relocation of said track shall be determined by engineering representatives of Grantors and Grantee and shall be over such land as will provide a track subgrade elevation between elevations nine feet and thirteen feet above mean sea level, and be such land as will avoid excessive curvature, grade and distances for the relocated track.

(2) Upon and after execution of this instrument, the officers, agents and employees of Grantee shall have the right to enter upon and use the land above described for the purpose of constructing thereon and thereover railroad tracks and otherwise for railroad purposes including the right to do at any time such reasonable cutting, filling and grading as they may deem necessary, provided, however, that if such use of or work on said land would impair or obstruct the present drainage of any area, Grantee will provide reasonable alternate drainage of such area.

(3) That if this easement or right of way be relocated or if the Grantee shall abandon the aforesaid land or right of way for railroad purposes and cease to use the same for such purposes, the Grantors and their respective

Page two.

successors and assigns shall be seized of their former estates therein and the aforesaid right of way and easement shall cease and determine. If a railroad track is placed on the right of way and easement and later removed and not replaced within one year, this shall be conclusively presumed to constitute an abandonment.

(4) The Grantors reserve the right to the use of said right of way for roads and drainage ditches, bridges, culverts, permanent and temporary logging facilities and for any and all purposes convenient or necessary for the conduct of their respective operations but said use shall not interfere with the purposes for which this easement was granted.

(5) Grantee will pay the actual damages to fences and growing crops on the above described land caused by the construction, operation, maintenance, inspection, rebuilding and removal of said railroad line and will repair the breakage caused to any bridge and any damage to any road due to heavy hauling to and from the right of way strip, if claim is made within sixty (60) days after such damages are sustained.

(6) The Grantors shall have the right at their expense to cross the right of way herein conveyed with pipeline or pipelines, drainage canals, road, utilities and electric power lines and other operations of the Grantors, provided such use shall not interfere with the purposes for which this easement was granted.

(7) The Grantee shall indemnify and save harmless the Grantors from any and all action, cause of action, suit, demand, claim, accident and cost arising out of, related to or in any manner connected with the construction, maintenance, operation, repair, replacement or use of the right of way and easement granted, or of the said railroad line and the fixtures or related facilities used in connection therewith, and which are based on any negligence or willful acts of commission of the Grantee, its agents, servants, employees

or contractors.

**117**

(8)   The Grantors shall not be responsible for damage to the railroad line or other facilities of Grantee not resulting from the negligence or willful acts of commission of the Grantors, their agents, servants, employees or contractors.

(9)   Grantee shall re-build and re-locate, parallel to the railroad right of way or at a place mutually agreed upon, all logging roads and drainage facilities which will be impaired or rendered useless by construction of the railroad, such relocations of roads and drainage facilities to be of the same character and usefulness to the Grantors as now.

(10)  If the Grantee should use poisonous or injurious sprays on the vegetation, trees or other growing crops in the said right of way and the same shall retard or kill the trees or crops and reproduction of trees or crops outside the right of way, the Grantee shall be accountable to the Grantors for the market value of any trees or crops or replacement cost of such reproduction as of the age when so retarded or destroyed.

(11)  In the event that any leases, options, or other arrangements between the Grantors are terminated or exercised so that Grantor North Carolina Phosphate Corporation ceases to hold a legal interest in any or all of the lands over which the easement herein granted lies, Grantors Weyerhaeuser Company and/The Union Central Life Insurance Company, their successors and assigns, shall thereafter as to those lands of Grantor North Carolina Phosphate Corporation to which either acquires a legal interest be deemed to be the sole grantor of the rights granted by this easement and shall thereafter as to those lands be solely entitled to the rights reserved to the Grantors of this easement and solely subject to the obligations of the Grantors.

(12)  In the event that any leases, options, or other arrangements between the Grantors are terminated or exercised so that Grantor Weyerhaeuser Company ceases to hold a legal interest in any or all of the lands over which

Page four.

the easement herein granted lies, Grantors North Carolina Phosphate Corporation
and/Union Central Life Insurance Company, their successors and assigns, shall
thereafter as to those lands of Grantor Weyerhaeuser Company to which either
acquires a legal interest be deemed to be the sole grantor of the rights
granted by this easement and shall thereafter as to those lands be solely
entitled to the rights reserved to the Grantors of this easement and solely
subject to the obligations of the Grantors.

(13) In the event that any leases, options, or other arrangements between
the Grantors are terminated or exercised so that/Union Central Life Insurance
Company, Grantor, ceases to hold a legal interest in any or all of the lands
over which the easement herein granted lies, Grantors North Carolina Phosphate
Corporation and Weyerhaeuser Company, their successors and assigns, shall
thereafter as to those lands of Grantor/Union Central Life Insurance Company
to which either acquires a legal interest be deemed to be the sole grantor
of the rights granted by this easement and shall thereafter as to those lands
be solely entitled to the rights reserved to the Grantors of this easement
and solely subject to the obligations of the Grantors.

(14) The right of way and easement herein conveyed by North Carolina
Phosphate Corporation, Weyerhaeuser Company and/Union Central Life Insurance
Company to Norfolk Southern Railway Company shall forthwith become subject
to the lien of the First Mortgage of Norfolk Southern Railway Company to
Manufacturers Hanover Trust Company, as Trustee, dated as of July 1, 1938
and recorded, among other places, with the Register of Deeds of Beaufort
County in Book 343, page 83, and also to the lien of the General Mortgage
and Deed of Trust of Norfolk Southern Railway Company to Chase Manhattan
Bank, as Trustee, dated as of June 1, 1960, and recorded, among other places,
with the Register of Deeds of Beaufort County in Book 513, page 127, and,
also to the lien of the Second General Mortgage and Deed of Trust of Norfolk
Southern Railway Company to United States Trust Company of New York, as
Trustee, dated as of April 1, 1963 and recorded, among other places, with

Case 4:05-cv-00055-D   Document 1   Filed 05/06/05   Page 35 of 65

the Register of Deeds of Beaufort County, North Carolina, in Book 551, page 1.

(15) Grantor Weyerhaeuser Company reserves for itself such timber on the said right of way as it wants with the understanding that Grantor Weyerhaeuser Company will cooperate with Grantee and get such timber as Grantor Weyerhaeuser Company wants from said right of way removed so as not to hinder the work of Grantee on said right of way.

(16) Grantee agrees that no stumps or tops or debris from Grantee's work on said right of way will be left on the property of Grantors adjoining the right of way herein granted.

(17) This easement is executed by Weyerhaeuser Company by and through its legally constituted and appointed Attorney in Fact, Joseph C. Brown, Jr., whose power of attorney bears date of March 21, 1962, and is duly recorded in the Public Registry of Beaufort County in Book 535, page 5.

Grantors, for themselves, their successors and assigns, covenant to and with Grantee, its successors and assigns, that they are seized in fee simple of the above described land and have the right to grant the aforesaid right of way and easement, that the said land is free and clear from any and all encumbrances and that they will warrant and defend the grant of said right of way and easement against the lawful claims of all persons, whomsoever. Liability under the warranty shall be limited to the refund by the Grantors of the purchase price received per acre for any acreage lost.

IN WITNESS WHEREOF, North Carolina Phosphate Corporation has caused this instrument to be signed in its name by its President and its corporate seal to be hereunto affixed and attested by its Secretary; Weyerhaeuser Company has caused this instrument to be signed in its name by its duly authorized Attorney in Fact, Joseph C. Brown, Jr., and/The Union Central Life Insurance Company has caused this instrument to be signed in its name by its President and its corporate seal to be hereunto affixed and attested by its Secretary, the day and year first above written; and Grantee, signifying

Page six.

**420**

its acceptance of and agreement to the conditions and reservations herein contained, has caused this instrument to be signed in its name by its President and its corporate seal to be hereunto affixed and attested by its Secretary, the day and year first above written.

NORTH CAROLINA PHOSPHATE CORPORATION

(Corporate Seal)

By _Hughes Mayo_
       President

ATTEST:

_Malcolm R. Wilkey_
       Secretary

WEYERHAEUSER COMPANY

By _Joseph S. Aaron Jr_
       Attorney in Fact

THE UNION CENTRAL LIFE INSURANCE COMPANY

(Corporate Seal)

By _____
       Vice President

ATTEST:

_Albert H. Bauer_
       Asst. Secretary

NORFOLK SOUTHERN RAILWAY COMPANY

(Corporate Seal)

By _____
       President

ATTEST:

_____
       Secretary

STATE OF NEW YORK

COUNTY OF __NEW YORK__

I, _____HELEN WATERS_____, a Notary Public, certify that

_____MALCOLM R. WILKEY_____ personally came before me this day and

acknowledged that he is Secretary of North Carolina Phosphate Corporation,

and that by authority duly given and as the act of the corporation, the

foregoing instrument was signed in its name by its President, __HUGHES MAYO__

_____, sealed with its corporate seal, and attested by himsel

Page seven.

as its Secretary.

WITNESS my hand and notarial seal, this _9th_ day of ~~June~~ _July_, 1965.

_Helen Waters_
Notary Public

My commission expires: _____

HELEN WATERS
Notary Public, State of New York
No. 31-4167660
Qualified in New York County
Commission Expires March 30, 1967

(N.P. Seal)

NORTH CAROLINA

~~BEAUFORT~~ _Martin_ COUNTY

I, _Ilene S. Brown_, a Notary Public of said County and State, do hereby certify that Joseph C. Brown, Jr., whose name is signed to the foregoing instrument as Attorney in Fact for Weyerhaeuser Company, has this day acknowledged before me that the said instrument has been signed by Weyerhaeuser Company by him as its duly authorized Attorney in Fact.

WITNESS my hand and notarial seal, this _15_ day of ~~June~~ _July_, 1965.

_Ilene S. Brown_
Notary Public

My commission expires: _June 17, 1967_

(N.P. Seal)

STATE OF __OHIO__

COUNTY OF __HAMILTON__

I, __Marguerite O'Brien__, a Notary Public, certify that __Albert H. Bauer__ personally came before me this day and acknowledged that he is/Secretary of/Union Central Life Insurance Company, a **Asst.** **The** corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its/President, **Vice** **B. G. DeWeese** _____, sealed with its corporate seal, and attested by himself as its/Secretary. **Asst.**

WITNESS my hand and notarial seal, this **3rd** day of ~~June~~ **August**, 1965.

_Marguerite O'Brien_
Notary Public

MARGUERITE O'BRIEN
Notary Public in and for Hamilton County, Ohio
My commission expires:__My Commission Expires Dec. 14, 1968__

(N.P. Seal)

Page eight.

422



TEXAS GULF
SULPHUR CO
JC FICKLEN TRACT

S°7'16"W
159.65'                    — STA 390+91

N 18°3'16"W

WEYERHAEUSER CO.
N.C. PHOSPHATE CORP.
UNION CENTRAL LIFE INS. CO.

3.5'

WEYERHAEUSER CO
N.C. PHOSPHATE CORP.
UNION CENTRAL LIFE INS. CO.

℄ 75' R/W 6

STA 409+00

℄ C.R.R. 1945

TEXAS GULF
SULPHUR CO.

N.C. GRID NORTH
COORDINATE SYSTEM

NORFOLK SOUTHERN RY. CO.
— RAILROAD EASEMENT —
WEYERHAEUSER CO.
N.C. PHOSPHATE CORP
UNION CENTRAL LIFE INS. CO.   To
NORFOLK SOUTHERN RY. CO.
Beaufort County, N.C.
Office of Chief Engr- Raleigh, N.C.
SCALE { LENGTH 1"=400'
        WIDTH 1"=200'
JUNE 7, 1965

Case 4:05-

NORTH CAROLINA

WAKE COUNTY

I, Betty Daves, a Notary Public, certify that Goldie M. Lane personally came before me this day and acknowledged that she is Secretary of Norfolk Southern Railway Company, a corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its President, Henry Oetjen, sealed with its corporate seal, and attested by herself as its Secretary, for the purposes therein expressed.

WITNESS my hand and notarial seal, this ___ day of July, 1965.

_____
Notary Public

My commission expires: February 11, 1967.

(N.P. Seal)

NORTH CAROLINA
BEAUFORT COUNTY

The foregoing certificates of Helen Waters a Notary Public of New York County, N. Y., Flora S. Brown a Notary Public of Martin County, N. C., Marguerite O'Brien a Notary Public of Hamilton County, Ohio and Betty Daves a Notary Public of Wake County are adjudged to be correct. Let the instrument with the certificates be registered.

Witness my hand this the 7th day of August, 1965.

_____
Deputy Clerk of Superior Court

Filed August 7, 1965 at 9:50 A.M.

John I. Morgan, Register of Deeds

Page nine.

Case 4:05-cv-00055-D   Document 1   Filed 05/06/05   Page 40 of 65

NORTH CAROLINA

BEAUFORT COUNTY

THIS DEED OF EASEMENT made this 12th day of October, 1965, by FRED R. ALFRED and wife, BETTY A. ALFRED, and TEXAS GULF SULPHUR COMPANY, a Texas corporation with its principal office in Houston, Texas, hereinafter called "Grantors", to NORFOLK SOUTHERN RAILWAY COMPANY, a Virginia corporation with its principal office in Raleigh, North Carolina, hereinafter called "Grantee"

W I T N E S S E T H, THAT,

WHEREAS, Grantors will grant to and Grantee will acquire an easement for railroad purposes over the hereinafter described land;

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) and other good and valuable consideration paid by Grantee, the receipt of which is hereby acknowledged, Grantors do hereby grant and convey unto Grantee, its successors and assigns, a right of way and easement for railroad purposes in, over and upon the following described land located in Richland Township, Beaufort County North Carolina, to-wit:

### PARCEL NO. 1



A strip of land 60 feet wide, 30 feet on each side of its center-line, said centerline being more fully described as follows:

Beginning at a point in the common property line of F. R. Alfred and R. L. Peed, said point being north 85 degrees 36 minutes west 89.8 feet from the intersection of said property line with the center of Secondary Route 1940; thence from said point of beginning north 38 degrees 36 minutes east 904.11 feet to a point; thence along a 4 degree curve to the left (with a spiral of 240 feet) 363.2 feet to a point in the south property line of a registered estate of F. R. Alfred, said point being south 85 degrees 24 minutes east 581.3 feet from the intersection of said registered estate property line with the center of Secondary Route 1940; containing 1.75 acres, more or less, and being more specifically shown as Right of Way Parcel No. 1 on print attached hereto and made a part hereof, entitled Norfolk Southern Railway Company Right of Way across F. R. Alfred tract, dated October 11, 1965.

### PARCEL NO. 2



A strip of land generally 60 feet wide, generally 30 feet on each side of its centerline through a registered estate of F. R. Alfred, said centerline being more fully described as follows:

Beginning at a point, said point being three courses and distances from the intersection of the center of Whitehurst Creek with the center of Secondary Route 1940, as follows - from said intersection south 4 degrees 56 minutes west 1233.9 feet; thence south 5 degrees 18 minutes west 670.3 feet; thence south 85 degrees 24 minutes east 581.3 feet to the point of beginning; thence from said point of beginning northwardly along a 4 degree curve to the left a distance of

705.14 feet to a point; thence north 5 degrees 28 minutes east 679.27 feet; thence along a 4 degree curve to the right with a 240-foot spiral a distance of 923.13 feet to a point; thence north 32 degrees 47 minutes 30 seconds east 436.83 feet to the center of Whitehurst Creek; containing 3.79 acres, more or less, and being more specifically shown as Right of Way Parcel No. 2 on print attached hereto and made a part hereof, entitled Norfolk Southern Railway Company Right of Way across F. R. Alfred Tract, dated October 11, 1965. Said Parcel No. 2 is a portion of Registered Estate No. 454.

TO HAVE AND TO HOLD the aforesaid right of way and easement unto Grantee its successors and assigns, for so long as said right of way and easement sh be used for railroad purposes and shall not be abandoned.

It is expressly understood and agreed by and between the parties hereto follows:

(1) If, after 10 years from the date of this instrument, Texas Gulf Sulphur Company has exercised its option on the land of Fred R. Alfred and Betty A. Alfred, across which this right of way and easement is given, and T Gulf Sulphur Company then determines that all or any part of said right of and easement interferes with its anticipated mining or processing operations the Beaufort County, North Carolina area, then Texas Gulf Sulphur Company sh notify Norfolk Southern Railway Company in writing of its desire that the r of way and track be moved, specifying in said notice the date on which it de the said tracks to be relocated, which date shall not be less than 16 months after the date of said notice, and designating in the notice a new location the right of way and relocation of the said track. The new location for the right of way and relocation of said track shall be over such land as shall necessitate excessive or unreasonable filling or bridge building for the re tion of said track and be such land as will avoid excessive or unreasonable curvature, grade and distances for the relocated track and said relocation not affect the ability of Norfolk Southern Railway Company to comply with i legal obligation to serve any existing customer then on its line. During t first three months following the sending of such notice, Texas Gulf Sulphur Company shall consult with the engineering representatives of Norfolk South Railway Company as to whether the proposed relocation complies with the conditions imposed by the foregoing sentence and the engineering representa of Norfolk Southern Railway Company shall notify Texas Gulf Sulphur Company any revisions they consider necessary to bring about such compliance. Texa Gulf Sulphur Company shall accept any bona fide determination made by the engineering representatives of Norfolk Southern Railway Company with regard such matters. Within one month after receiving written notice with regard such matters from said engineering representatives of Norfolk Southern Rail Company, Texas Gulf Sulphur Company shall give Norfolk Southern Railway Com written notice indicating either that Texas Gulf Sulphur Company has abando the proposed relocation or has elected to proceed with the relocation, subj to the revisions called for by said engineering representatives of Norfolk Southern Railway Company. In the latter event, Texas Gulf Sulphur Company shall provide Norfolk Southern Railway Company with a 60 feet right of way easement over said new location and Norfolk Southern Railway Company, at it expense, shall within one year relocate the said track on the said new righ way.

(2) Upon and after execution of this instrument, the officers, agents and employees of Grantee shall have the right to enter upon and use the lan above described for the purpose of constructing thereon and thereover rail

- 2 -

tracks and otherwise for railroad purposes including the right to do at any time such reasonable cutting, filling and grading as they may deem necessary, provided, however, that if such use of or work on said land would impair or obstruct the present drainage of any area, Grantee shall provide reasonable alternate drainage of such area.

(3)   That if the Grantee shall abandon the aforesaid land or right of way for railroad purposes and cease to use the same for such purposes, the Grantors and their heirs, successors and assigns, shall be seized of their former estates therein and the aforesaid right of way and easement shall cease and determine.  Failure to build a track on said right of way and easement within a period of one year from the date of this instrument shall be conclusively presumed to constitute an abandonment.

(4)   The Grantors reserve the right to the use of said right of way for roads and drainage ditches, bridges, culverts, and for any and all purposes convenient or necessary for the conduct of its operations but said use shall not unreasonably interfere with the purposes for which this easement was granted.  In case of any disagreement as to such matters, the Grantee's good faith decision will control.

(5)   The Grantors shall have the right at their expense to cross the right of way herein conveyed with pipeline or pipelines, drainage canals, road, utilities and electric power lines and other operations of the Grantors, provided such use shall not unreasonably interfere with the purposes for which this easement was granted.  In case of any disagreement as to such matters, the Grantee's good faith decision will control.

(6)   The right of way and easement herein conveyed to Norfolk Southern Railway Company shall forthwith become subject to the lien of the First Mortgage of Norfolk Southern Railway Company to Manufacturers Hanover Trust Company, as Trustee, dated as of July 1, 1938, and recorded, among other places, with the Register of Deeds of Beaufort County in Book 343, page 83, and also to the lien of the General Mortgage and Deed of Trust of Norfolk Southern Railway Company to Chase Manhattan Bank, as Trustee, dated as of June 1, 1960, and recorded, among other places, with the Register of Deeds of Beaufort County in Book 513, page 127, and, also to the lien of the Second General Mortgage and Deed of Trust of Norfolk Southern Railway Company to United States Trust Company of New York, as Trustee, dated as of April 1, 1963, and recorded, among other places, with the Register of Deeds of Beaufort County, North Carolina, in Book 551, page 1.

(7)   The railroad tracks and appurtenant facilities installed by Grantee shall be and remain the property of Grantee and may be removed by it at any time and from time to time.

(8)   Grantee will not unreasonably withhold its consent to Grantors' use of said land for agriculture and grazing, provided such use does not interfere with the rights herein granted.

L. H. ROSS, TRUSTEE, and WASHINGTON PRODUCTION CREDIT ASSOCIATION join in the execution of this instrument for the sole purposes of releasing the right of way and easement rights herein conveyed from the lien of that certain Deed of Trust dated December 10, 1963, and appearing of record in Book 560, page 261, Beaufort County Registry, and from the lien of that certain Deed of Trust dated January 7, 1965, and appearing of record in Book 577, page 156, Beaufort County Registry.

EDWARD N. RODMAN, TRUSTEE, and DELL ALFRED and JOSEPHINE B. ALFRED join in the execution of this instrument for the sole purpose of releasing the right of way and easement rights herein conveyed from the liens of those

- 3 -



N 85°-36'W - 668.9'

STA 145+79.3

RIGHT
PARCEL
OF
WAY
No 1

N 38°-30'E - 906.1'

STA 154+85.41

S.R. 1940

S 5°-18'W - 670.4'

RIGHT OF WAY PARCEL No 2
PORTIONS MONUMENTED INSTAL. #154

S 4°-56'W - 1233.9'

STA 158+46.41

1°-32'-00"

STA 167+85.83

STA 168+35.76

6°-19.27'

N 22°-49'E

STA 174+32
R/W LINE
STA 174+59.93

5°-27'-19.30"
D 4°-00'

923.13'

STA 181+79.06 L.B.
STA 181+21.31 L.A.

E STA 186+20

NORFOLK SOUTHERN RY. CO.
Right of Way
Across
FR ALFRED TRACT
BEAUFORT COUNTY, N.C.
OFFICE OF CHIEF ENGR. RALEIGH, N.C.
SCALE 1" = 200'
OCT. 11, 1965

Case 4:05

certain Deeds of Trust dated September 24, 1960, and recorded in Book 514, page 165, and Book 514, page 169, both of Beaufort County Registry.

Reference is made to an Option Contract dated December 22, 1962, recorded in Book 544, page 72, Beaufort County Registry, executed by Fred R. Alfred and wife, Betty A. Alfred, to Texas Gulf Sulphur Company. In consideration of $2,609.90 deduction hereinafter mentioned, and at the request of Fred R. Alfred and wife, Betty A. Alfred, Texas Gulf Sulphur Company joins in the execution of this instrument for the purpose of subordinating, and it does hereby subordinate, its rights under said Option Contract to the provisions of this right of way deed. Fred R. Alfred and wife, Betty A. Alfred, do hereby acknowledge that they have received $2,609.90 from Norfolk Southern Railway Company as a consideration for the execution of this right of way deed; and they do hereby agree with Texas Gulf Sulphur Company that $2,609.90 shall be deducted from the amount which otherwise would be due to them by Texas Gulf Sulphur Company under the provisions of said Option Contract.

IN WITNESS WHEREOF, FRED R. ALFRED and wife, BETTY A. ALFRED, have hereunto set their hands and seals; TEXAS GULF SULPHUR COMPANY has caused this instrument to be signed in its name by its President and its corporate seal to be hereunto affixed and attested by its Secretary; L. H. ROSS, TRUSTEE, has hereunto set his hand and seal; WASHINGTON PRODUCTION CREDIT ASSOCIATION has caused this instrument to be signed in its name by its President and its corporate seal to be hereunto affixed and attested by its Secretary; EDWARD N. RODMAN, TRUSTEE, DELL ALFRED and JOSEPHINE B. ALFRED have hereunto set their hands and seals, all the day and year first above written, AND NORFOLK SOUTHERN RAILWAY COMPANY, signifying its acceptance of and agreement to the conditions and reservations herein contained, has caused this instrument to be signed in its name by its President and its corporate seal to be hereunto affixed and attested by its Secretary, the day and year first above written.

_____ (SEAL)
FRED R. ALFRED

_____ (SEAL)
BETTY A. ALFRED

(Corporate Seal)

Attest:

_____
Secretary

TEXAS GULF SULPHUR COMPANY

By:_____
President

_____ (SEAL)
L. H. ROSS, TRUSTEE

(Corporate Seal)

Attest:

_____
Secretary

WASHINGTON PRODUCTION CREDIT ASSOCIATION

By:_____
President

_____ (SEAL)
EDWARD N. RODMAN, TRUSTEE

- 4 -

DELL ALFRED

*Josephine B. Alfred*
JOSEPHINE B. ALFRED

NORFOLK SOUTHERN RAILWAY COMPANY

By _____
President

(Corporate Seal)
ATTEST:

_____
Secretary

NORTH CAROLINA
BEAUFORT COUNTY

I, *Mary Cecilia Lankardum*, a Notary Public of Beaufort Co
North Carolina, do hereby certify that FRED R. ALFRED and wife, BETTY A. AL
each personally appeared before me this day and acknowledged the due execut
of the foregoing instrument for the purposes therein expressed.

Witness my hand and notarial seal, this 19th day of ~~October~~ November 1965.

*Mary Cecilia Lank*
Notary Public

My commission expires: *August 9, 1966*

_____

STATE OF NEW YORK
COUNTY OF *New York*

I, *Anastasia E. Lawlor*, a Notary Public of said County a
State, do hereby certify that *John L. Bartlett* personally
appeared before me this day and acknowledged that he is Secretary of TEXAS
SULPHUR COMPANY, a corporation, and that by authority duly given and as the
of the corporation, the foregoing deed of easement was signed in its name b
its President, sealed with its corporate seal, and attested by himself as
Secretary, for the purposes therein expressed.

Witness my hand and notarial seal, this 16th day of ~~October~~ November 1965.

ANASTASIA E. LAWLOR
NOTARY PUBLIC, State of New York
No. 31-7445700
Qualified in New York County
Commission Expires March 30, 196

*Anastasia E. Law*
Notary Public

My commission expires:

_____

- 5 -

NORTH CAROLINA

BEAUFORT COUNTY

I, *Mary Cecilia Tankard*, a Notary Public of Beaufort County, North Carolina, do hereby certify that L. H. ROSS personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed.

Witness my hand and notarial seal, this 18th day of ~~October~~ *November*, 1965.

*Mary Cecilia Tankard*
Notary Public

My commission expires: *August 9, 1966*

---

NORTH CAROLINA

BEAUFORT COUNTY

I, *Mary Cecilia Tankard*, a Notary Public of said County and State, do hereby certify that *B. M. Richardson* personally appeared before me this day and acknowledged that he is Secretary of WASHINGTON PRODUCTION CREDIT ASSOCIATION, a corporation, and that by authority duly given and as the act of the corporation, the foregoing deed of easement was signed in its name ~~by its President~~, sealed with its corporate seal, and ~~attested~~ *signed* by himself as its Secretary, for the purposes therein expressed.

Witness my hand and notarial seal, this 18th day of ~~October~~ *November*, 1965.

*Mary Cecilia Tankard*
Notary Public

My commission expires: *August 9, 1966*

---

NORTH CAROLINA

BEAUFORT COUNTY

I, *Pat S. Respess*, a Notary Public of Beaufort County, North Carolina, do hereby certify that EDWARD N. RODMAN personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed.

Witness my hand and notarial seal, this 18 day of ~~October~~ *November*, 1965.

*Pat S. Respess*
Notary Public

My commission expires: *10-24-67*

---

- 6 -

408

NORTH CAROLINA
~~BEAUFORT~~ COUNTY
GUILFORD

I, _Mary P. Fowle_, a Notary Public of ~~Beaufort~~ County, GUILFORD
North Carolina, do hereby certify that ~~DELL ALFRED~~ and JOSEPHINE B. ALFRED each
personally appeared before me this day and acknowledged the due execution of
the foregoing instrument for the purposes therein expressed.

Witness my hand and notarial seal, this _23_ day of October, 1965.

_Mary P. Fowle_
Notary Public

My commission expires: _Sept. 23, 1967_

NORTH CAROLINA
WAKE COUNTY

I, _Daisy B. Smithwick_, a Notary Public for said County
and State, do hereby certify that Goldie M. Lane personally came before me
this day and acknowledged that she is Secretary of NORFOLK SOUTHERN RAILWAY
COMPANY, a corporation, and that by authority duly given and as the act of the
corporation, the foregoing deed of easement was signed in its name by its
President, sealed with its corporate seal, and attested by herself as its
Secretary, for the purposes therein expressed.

Witness my hand and notarial seal, this _12th_ day of October, 1965.

_Daisy B. Smithwick_
Notary Public

My commission expires: _November 19, 1965_

North Carolina, Beaufort County
The foregoing certificates of Mary Cecilia Tankard, Notary Public
Beaufort County, Anastasia E. Lawlor, Notary Public of New York,
Pat I. Respess, Notary Public of Beaufort County, Mary P. Fowler,
Notary Public of Guilford County, N. C. and Daisy B. Smithwick, Not
Public of Wake County are adjudged to be correct. Let instrument
these certificates be registered.
Witness my hand this the 19th day of November, 1965.

_Hannah N. Everland_
Assistant Clerk of Superior Court

Filed November 19, 1965 at 12:45 P.M.

John I. Morgan, Register of Deeds

- 7 -

NORTH CAROLINA

BEAUFORT COUNTY

THIS DEED OF EASEMENT made this 15th day of April, 1966, by TEXAS GULF SULPHUR COMPANY, a Texas corporation with its principal office in Houston, Texas, hereinafter called "Grantor", to NORFOLK SOUTHERN RAILWAY COMPANY, a Virginia corporation with its principal office in Raleigh, North Carolina, hereinafter called "Grantee";

W I T N E S S E T H, THAT,

WHEREAS, Grantor will grant to and Grantee will acquire an easement for railroad purposes over the hereinafter described land;

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) and other good and valuable consideration paid by Grantee, the receipt of which is hereby acknowledged, Grantor does hereby grant and convey unto Grantee, its successors and assigns, a right of way and easement for railroad purposes in, over and upon the following described land located in Richland Township, Beaufort County, North Carolina, to-wit:

A certain strip of land 75 feet in width, 30 feet east of the centerline of the main line and 45 feet west of the centerline of the main line lying and being in Richland Township, Beaufort County, North Carolina, the centerline of the main line being more fully described as follows:

Beginning at a point, said point being south 19 deg. 49 min. 21 sec. east 918 feet from the intersection of the center of Secondary Route 1946, otherwise known as Hickory Point Road, with the said centerline of the main line; thence from said point of beginning south 19 deg. 49 min. 21 sec. east 2,333 feet, more or less, to the point of curve; thence 257 feet, more or less, along a four-degree curve with an intersecting angle of 12 degrees 26 min. and a 240 foot spiral to a point in the property line of Weyerhaeuser Company, containing 4.45 acres, more or less, and being shown cross-hatched on print attached hereto and made a part hereof entitled "Norfolk Southern Railway Co. Right of Way Across Texas Gulf Sulphur Company's J. S. Ficklin Tract" dated January 5, 1966.

TO HAVE AND TO HOLD the aforesaid right of way and easement unto Grantee, its successors and assigns, for so long as said right of way and easement shall be used for railroad purposes and shall not be abandoned.

It is expressly understood and agreed by and between the parties hereto as follows:

(1) If, after 10 years from the date of this instrument, Texas Gulf Sulphur Company determines that all or any part of said right of way and easement interferes with its anticipated mining or processing operations in the Beaufort County, North Carolina area, then Texas Gulf Sulphur Company

shall notify Norfolk Southern Railway Company in writing of its desire that the right of way and track be moved, specifying in said notice the date on which it desires the said tracks to be relocated, which date shall not be less than 16 months after the date of said notice, and designating in the notice a new location for the right of way and relocation of the said track. The new location for the right of way and relocation of said track shall be over such land as shall not necessitate excessive or unreasonable filling or bridge building for the relocation of said track and be such land as will avoid excessive or unreasonable curvature, grade and distances for the relocated track and said relocation will not affect the ability of Norfolk Southern Railway Company to comply with its legal obligation to serve any existing customer then on its line. During the first three months following the sending of such notice, Texas Gulf Sulphur Company shall consult with the engineering representatives of Norfolk Southern Railway Company as to whether the proposed relocation complies with the conditions imposed by the foregoing sentence and the engineering representatives of Norfolk Southern Railway Company shall notify Texas Gulf Sulphur Company of any revisions they consider necessary to bring about such compliance. Texas Gulf Sulphur Company shall accept any bona fide determination made by the engineering representatives of Norfolk Southern Railway Company with regard to such matters. Within one month after receiving written notice with regard to such matters from said engineering representatives of Norfolk Southern Railway Company, Texas Gulf Sulphur Company shall give Norfolk Southern Railway Company written notice indicating either that Texas Gulf Sulphur Company has abandoned the proposed relocation or has elected to proceed with the relocation, subject to the revisions called for by said engineering representatives of Norfolk Southern Railway Company. In the latter event, Texas Gulf Sulphur Company shall provide Norfolk Southern Railway Company with a 60 foot right of way and easement over said new location and Norfolk Southern Railway Company, at its expense, shall within one year relocate the said track on the said new right of way.

(2) Upon and after execution of this instrument, the officers, agents and employees of Grantee shall have the right to enter upon and use the land above described for the purpose of constructing thereon and thereover railroad tracks and otherwise for railroad purposes including the right to do at any time such reasonable cutting, filling and grading as they may deem necessary, provided, however, that if such use of or work on said land would impair or obstruct the present drainage of any area, Grantee shall provide reasonable alternate drainage of such area.

(3) That if the Grantee shall abandon the aforesaid land or right of way for railroad purposes and cease to use the same for such purposes, the Grantor and its successors and assigns, shall be seized of its former estate therein and the aforesaid right of way and easement shall cease and determine. Failure to build a track on said right of way and easement within a period of one year from the date of this instrument shall be conclusively presumed to constitute an abandonment.

(4) The Grantor reserves the right to the use of said right of way for roads and drainage ditches, bridges, culverts, and for any and all purposes convenient or necessary for the conduct of its operations, but said use shall not unreasonably interfere with the purposes for which this easement was granted. In case of any disagreement as to such matters, the Grantee's good faith decision will control.

Page two.

(5)  The Grantor shall have the right at its expense to cross the right of way herein conveyed with pipeline or pipelines, drainage canals, road, utilities and electric power lines and other operations of the Grantor, provided such use shall not unreasonably interfere with the purposes for which this easement was granted.  In case of any disagreement as to such matters, the Grantee's good faith decision will control.

(6)  The right of way and easement herein conveyed to Norfolk Southern Railway Company shall forthwith become subject to the lien of the First Mortgage of Norfolk Southern Railway Company to Manufacturers Hanover Trust Company, as Trustee, dated as of July 1, 1938, and recorded, among other places, with the Register of Deeds of Beaufort County in Book 343, page 83, and also to the lien of the General Mortgage and Deed of Trust of Norfolk Southern Railway Company to The Chase Manhattan Bank, as Trustee, dated as of June 1, 1960, and recorded, among other places, with the Register of Deeds of Beaufort County in Book 513, page 127, and, also to the lien of the Second General Mortgage and Deed of Trust of Norfolk Southern Railway Company to United States Trust Company of New York, as Trustee, dated as of April 1, 1963, and recorded, among other places, with the Register of Deeds of Beaufort County, North Carolina, in Book 551, page 1.

(7)  The railroad tracks and appurtenant facilities installed by Grantee shall be and remain the property of Grantee and may be removed by it at any time and from time to time.

(8)  Grantee will not unreasonably withhold its consent to Grantor's use of said land for agriculture and grazing, provided such use does not interfere with the rights herein granted.

IN WITNESS WHEREOF, TEXAS GULF SULPHUR COMPANY has caused this instrument to be signed in its name by its President and its corporate seal to be hereunto affixed and attested by its Secretary, and NORFOLK SOUTHERN RAILWAY COMPANY, signifying its acceptance of and agreement to the conditions and reservations herein contained, has caused this instrument to be signed in its name by its President and its corporate seal to be hereunto affixed and attested by its Secretary, the day and year first above written.

(Corporate Seal)

ATTEST:

_____
Secretary

(Corporate Seal)

ATTEST:

_____
Secretary

TEXAS GULF SULPHUR COMPANY

By _____
President

NORFOLK SOUTHERN RAILWAY COMPANY

By _____
President

Page three.



554

STATE OF NEW YORK

COUNTY OF *New York*

    I, *Anastasia E. Lawlor*, a Notary Public of said County and State, do hereby certify that *Lester Huntington* personally came before me this day and acknowledged that he is Secretary of TEXAS GULF SULPHUR COMPANY, a corporation, and that by authority duly given and as the act of the corporation, the foregoing deed of easement was signed in its name by its President, sealed with its corporate seal, and attested by himself as its *Asst,* Secretary, for the purposes therein expressed.

    Witness my hand and notarial seal, this *2V* day of April, 1966.

ANASTASIA F. LAWLOR
NOTARY PUBLIC, State of New York
No. 31-7448205
Qualified in New York County
Commission Expires March 30, 195 8

*Anastasia E. Lawlor*
Notary Public

My commission expires:

---

NORTH CAROLINA

WAKE COUNTY

    I, *Daisy B. Smithwick*, a Notary Public for said County and State, do hereby certify that Goldie M. Lane personally came before me this day and acknowledged that she is Secretary of NORFOLK SOUTHERN RAILWAY COMPANY, a corporation, and that by authority duly given and as the act of the corporation, the foregoing deed of easement was signed in its name by its President, sealed with its corporate seal, and attested by herself as its Secretary, for the purposes therein expressed.

    Witness my hand and notarial seal, this *25TH* day of April, 1966.

*Daisy B. Smithwick*
Notary Public

My commission expires: *November 19, 1967*

    North Carolina    Beaufort County

    The foregoing certificates of *Anastasia E. Lawlor* Notary Public of *New York Co. N.Y.* Notary Public of _____ Co. and *Daisy B. Smithwick* a Notary Public of *Wake* Co. are adjudged to be correct. Let instrument with the certificates be registered.

    Witness my hand this the *2* day of *May*, 19 6 6

*Myra Peppin, Dep.* :Clerk Superior Court

    Filed May 2, 1966 at 9:05 A. M.
    John I. Morgan, Register of Deeds

Page four.

NORTH CAROLINA

BEAUFORT COUNTY

67

THIS DEED OF EASEMENT made this _3rd_ day of May, 1966, by TEXAS
GULF SULPHUR COMPANY, a Texas corporation with its principal office in
Houston, Texas, hereinafter called "Grantor", to NORFOLK SOUTHERN RAILWAY
COMPANY, a Virginia corporation with its principal office in Raleigh,
North Carolina, hereinafter called "Grantee";

W I T N E S S E T H, THAT,

WHEREAS, Grantor will grant to and Grantee will acquire an easement for
railroad purposes over the hereinafter described land;

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) and other good
and valuable consideration paid by Grantee, the receipt of which is hereby
acknowledged, Grantor does hereby grant and convey unto Grantee, its successors
and assigns, a right of way and easement for railroad purposes in, over and
upon the following described land located in Richland Township, Beaufort County,
North Carolina, to-wit:

Those certain strips of land each 60 feet wide, 30 feet
either side of the centerline, being in Richland Township,
Beaufort County, North Carolina, the centerlines of which
are more fully described as follows:

PARCEL NO. 1:  Beginning at a point, said point
being the intersection point of the centerline
of Secondary Route 1945, otherwise known as Sandy
Landing Road, with the centerline of the Norfolk
Southern Railway Company's Lee Creek Branch Line,
station 356+46; thence from said point of beginning
in a general southeasterly direction along a 4-degree
curve to the right, with an interior angle of 16
degrees 01 minutes, 385 feet to a point; thence south
16 degrees 17 minutes 01 second east 1762 feet, more
or less, to a point; thence along a 4-degree curve
to the right with an interior angle of 50 degrees
08 minutes 672 feet, more or less, to the easterly
property of North Carolina Phosphate Company, station
326+78.

PARCEL NO. 2:  Beginning at a point in the southerly
property line of North Carolina Phosphate Company,
station 323+98; thence in a generally southerly
direction along a 4-degree curve to the right with
an interior angle of 50 degrees 08 minutes 397 feet,
more or less, to the centerline of Drinkwater Creek.

These two parcels contain 4.43 acres, more or less,
and are shown as parcels 1 and 2 on map entitled,
"Right of Way across Texas Gulf Sulphur's Mallison
Tract", which map is attached hereto and made a part
hereof and to which map reference is made for a more
perfect description of the said two parcels.

TO HAVE AND TO HOLD the aforesaid right of way and easement unto Grantee,
its successors and assigns, for so long as said right of way and easement shall
be used for railroad purposes and shall not be abandoned.

It is expressly understood and agreed by and between the parties hereto
as follows:

(1) If, after 10 years from the date of this instrument, Texas Gulf
Sulphur Company determines that all or any part of said right of way and
easement interferes with its anticipated mining or processing operations in
the Beaufort County, North Carolina, area, then Texas Gulf Sulphur Company
shall notify Norfolk Southern Railway Company in writing of its desire that
the right of way and track be moved, specifying in said notice the date on
which it desires the said tracks to be relocated, which date shall not be
less than 16 months after the date of said notice, and designating in the
notice a new location for the right of way and relocation of the said track.
The new location for the right of way and relocation of said track shall be
over such land as shall not necessitate excessive or unreasonable filling or
bridge building for the relocation of said track and be such land as will
avoid excessive or unreasonable curvature, grade and distances for the relo-
track and said relocation will not affect the ability of Norfolk Southern Ra
Company to comply with its legal obligation to serve any exisiting customer
on its line. During the first three months following the sending of such n
Texas Gulf Sulphur Company shall consult with the engineering representative
Norfolk Southern Railway Company as to whether the proposed relocation compl
with the conditions imposed by the foregoing sentence and the engineering
representatives of Norfolk Southern Railway Company shall notify Texas Gulf
Sulphur Company of any revisions they consider necessary to bring about such
compliance. Texas Gulf Sulphur Company shall accept any bona fide determina
made by the engineering representatives of Norfolk Southern Railway Company
regard to such matters. Within one month after receiving written notice wi
regard to such matters from said engineering representatives of Norfolk Sou
Railway Company, Texas Gulf Sulphur Company shall give Norfolk Southern Rai
Company written notice indicating either that Texas Gulf Sulphur Company ha
abandoned the proposed relocation or has elected to proceed with the reloca
subject to the revisions called for by said engineering representatives of
Norfolk Southern Railway Company. In the latter event, Texas Gulf Sulphur
Company shall provide Norfolk Southern Railway Company with a 60-foot right
way and easement over said new location and Norfolk Southern Railway Compan
at its expense, shall within one year relocate the said track on the said n
right of way.

(2) Upon and after execution of this instrument, the officers, agents
and employees of Grantee shall have the right to enter upon and use the lan
above described for the purpose of constructing thereon and thereover railr
tracks and otherwise for railroad purposes including the right to do at any
time such reasonable cutting, filling and grading as they may deemnecessary
provided, however, that if such use of or work on said land would impair or
obstruct the present drainage of any area, Grantee shall provide reasonable
alternate drainage of such area.

(3) That if the Grantee shall abandon the aforesaid land or right of
for railroad purposes and cease to use the same for such purposes, the Gran
and its successors and assigns, shall be seized of its former estate therei
and the aforesaid right of way and easement shall cease and determine. Fai
to build a track on said right of way and easement within a period of one y
from the date of this instrument shall be conclusively presumed to constitu
an abandonment.

(4) The Grantor reserves the right to the use of said right of way fo
roads and drainage ditches, bridges, culverts, and for any and all purposes
convenient or necessary for the conduct of its operations, but said use sha
not unreasonably interfere with the purposes for which this easement was gr
In case of any disagreement as to such matters, the Grantee's good faith de
will control.

Page two.

(5)  The Grantor shall have the right at its expense to cross the right of way herein conveyed with pipeline or pipelines, drainage canals, road, utilities and electric power lines and other operations of the Grantor, provided such use shall not unreasonably interfere with the purposes for which this easement was granted.  In case of any disagreement as to such matters, the Grantee's good faith decision will control.

(6)  The right of way and easement herein conveyed to Norfolk Southern Railway Company shall forthwith become subject to the lien of the First Mortgage of Norfolk Southern Railway Company to Manufacturers Hanover Trust Company, as Trustee, dated as of July 1, 1938, and recorded, among other places, with the Register of Deeds of Beaufort County in Book 343, page 83, and also to the lien of the General Mortgage and Deed of Trust of Norfolk Southern Railway Company to The Chase Manhattan Bank, as Trustee, dated as of June 1, 1960, and recorded, among other places, with the Register of Deeds of Beaufort County in Book 513, page 127, and, also to the lien of the Second General Mortgage and Deed of Trust of Norfolk Southern Railway Company to United States Trust Company of New York, as Trustee, dated as of April 1, 1963, and recorded, among other places, with the Register of Deeds of Beaufort County, North Carolina, in Book 551, page 1.

(7)  The railroad tracks and appurtenant facilities installed by Grantee shall be and remain the property of Grantee and may be removed by it at any time and from time to time.

(8)  Grantee will not unreasonably withhold its consent to Grantor's use of said land for agriculture and grazing, provided such use does not interfere with the rights herein granted.

JAMES B. McMULLAN, TRUSTEE, and MARY M. BAKER (MARY M. MALLISON), SAMUEL M. MALLISON, JR. and FREDERICK M. MALLISON join in the execution of this instrument for the sole purpose of releasing the right of way and easement rights herein conveyed from the lien of that certain Deed of Trust dated September 22, 1964, and recorded in Book 572, page 510, of the Beaufort County Registry.

IN WITNESS WHEREOF, TEXAS GULF SULPHUR COMPANY has caused this instrument to be signed in its name by its President and its corporate seal to be hereunto affixed and attested by its Secretary; and JAMES B. McMULLAN, TRUSTEE, MARY M. BAKER (MARY M. MALLISON), SAMUEL M. MALLISON, JR. and FREDERICK M. MALLISON have hereunto set their hands and seals, all the day and year first above written; and NORFOLK SOUTHERN RAILWAY COMPANY signifying its acceptance of and agreement to the conditions and reservations herein contained, has caused this instrument to be signed in its name by its President and its corporate seal to be hereunto affixed and attested by its Secretary, the day and year first above written.

(Corporate Seal)

ATTEST:

_____
Secretary

TEXAS GULF SULPHUR COMPANY

By _____

_____ (SEAL)
JAMES B. McMULLAN, TRUSTEE

Page three.

_Mary M. Baker_ (SEAL)
MARY M. BAKER

_Mary M. Mallison_ (SEAL)
MARY M. MALLISON

_Sam M. Mallison_ (SEAL)
SAMUEL M. MALLISON, JR.

_Frederick M. Mallison_ (SEAL)
FREDERICK M. MALLISON

NORFOLK SOUTHERN RAILWAY COMPANY

By _Henry Elza_
President

(Corporate Seal)

ATTEST:

_Goldie M. Lane_
Secretary

---

STATE OF NEW YORK

COUNTY OF _New York_

I, _Christine T. Niesyn_, a Notary Public of said County and State do hereby certify that _____ personally appeared before me this day and acknowledged that he is Secretary of TEXAS GULF SULPHUR COMPANY, a corporation, and that by authority duly given and as the act of the corporation, the foregoing deed of easement was signed in its name by its President, sealed with its corporate seal, and attested by himself as its Secretary, for the purposes therein expressed.

Witness my hand and notarial seal, this __ day of _____, 1966.

_Christine T. Niesyn_
Notary Public
CHRISTINE T. NIESYN
Notary Public, State of New York
No. 57-2930723
Qualified in Richmond County
Certificate filed in New York County
Commission Expires March 30, 1967

(Notarial Seal)

My Commission expires: _March 30, 1967_

---

Page four.



NORFOLK SOUTHERN RY. CO.
RIGHT OF WAY ACROSS
TEXAS GULF SULPHUR COMPANY'S
MALLISON TRACT
BEAUFORT COUNTY, N.C.
OFFICE OF CHIEF ENGR. RALEIGH, N.C.
JAN. 5, 1966
SCALE 1"=200'

NORTH CAROLINA

BEAUFORT COUNTY

I, _Jean Taylor_ , a Notary Public of Beaufort County, North Carolina, do hereby certify that JAMES B. McMULLAN personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed.

Witness my hand and notarial seal, this _17th_ day of _February_, 1960.

(Notarial Seal)                         _Jean Taylor_
                                           Notary Public

My commission expires: _3-15-68_

---

STATE OF _North Carolina_

COUNTY OF _Beaufort_

I, _Carolyn Whitley_ , a Notary Public of said County and State, do hereby certify that MARY M. BAKER, who is the same person as MARY M. MALLISON, personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed.

Witness my hand and notarial seal, this _13_ day of _February_, 1960.

(Notarial Seal)                         _Carolyn Whitley_
                                           Notary Public

My commission expires: _January 12, 1968_

---

STATE OF _North Carolina_

COUNTY OF _Beaufort_

I, _Carolyn Whitley_ , a Notary Public of said County and State, do hereby certify that SAMUEL M. MALLISON, JR. personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed.

Witness my hand and notarial seal, this _9_ day of _February_, 1960.

(Notarial Seal)                         _Carolyn Whitley_
                                           Notary Public

My commission expires: _January 12, 1968_

Page five.

STATE OF _North Carolina_

COUNTY OF _Beaufort_

I, _Carolyn Whitley_, a Notary Public of said County and State, do hereby certify that FREDERICK M. MALLISON personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed.

Witness my hand and notarial seal, this _9_ day of _February_, 1967.

(Notarial Seal)

_Carolyn Whitley_
Notary Public

My commission expires: _January 15 1968_

---

NORTH CAROLINA

WAKE COUNTY

I, _Betty Davies_, a Notary Public for said County and State, do hereby certify that Goldie M. Lane personally came before me this day and acknowledged that she is Secretary of NORFOLK SOUTHERN RAILWAY COMPANY, a corporation, and that by authority duly given and as the act of the corporation, the foregoing deed of easement was signed in its name by its President, sealed with its corporate seal, and attested by herself as its Secretary, for the purposes therein expressed.

Witness my hand and notarial seal, this _28th_ day of _February_, 1966. 1967.

(Notarial Seal)

_Betty Lane_
Notary Public

My commission expires: _Feb. 11 1969_

NORTH CAROLINA
BEAUFORT COUNTY

The foregoing certificates of Christian T. Niemann a Notary Public of New York County, N. Y., Jean Taylor a Notary Public of Beaufort County, N. C., Carolyn Whitley a Notary Public of Beaufort County, N. C., and Betty Daves a Notary Public of Wake County, N. C. are adjudged to be correct. Let the instrument with the certificates be registered.

Witness my hand this the 1st day of March, 1967.

_Wayne Russell_
Deputy Clerk of Superior Court

FILED FOR REGISTRATION AT _12:15_ O'CLOCK _P_. M.
_____ DAY OF _MAR_ 1 1967 19 _____, AND
REGISTERED IN THE OFFICE OF THE REGISTER OF DEEDS
OF BEAUFORT COUNTY, IN BOOK _609_
PAGE _67_

_John C. Morgan_
Register of Deeds, Washington, N. C.

Page six.

☑ Grantor-Grantee ☒
☐ Grantor-Grantee ☒



**PCS Phosphate** AURORA

PCS PHOSPHATE COMPANY, INC
P.O. BOX 48, AURORA, NC U 3 A 27806  DIRECT. (252) 322-8203 FAX. (252) 322-8061

William T. Cooper, Jr.                                    November 20, 2003
General Manager Phosphate Operations
Aurora Division

Mr. Jim Bowman
Norfolk Southern Corporation
1500 Carson Street
Raleigh, NC 27608

Mr. Tom Ambler
Norfolk Southern Corporation
Three Commercial Place
Norfolk, VA 23510

Mr. Edison Cooper
Norfolk Southern Corporation
175 Spring Street, S.W.
Atlanta, GA 30303

Re:    Deeds of Easement

Dear Messrs. Bowman, Ambler and Cooper:

        PCS Phosphate Company, Inc., formerly known as Texas Gulf Sulphur Company, and
the successor to North Carolina Phosphate Corporation, is the Grantor of easements for railroad
purposes to Norfolk Southern Railway Company pursuant to the following Deeds of Easement
(collectively the "Relocation Agreements"):

    1.    June 29, 1965, filed and recorded with the Register of Deeds of Beaufort County,
          North Carolina in Book 586, Pages 517 through 527.

    2.    June 29, 1965, filed and recorded with the Register of Deeds of Beaufort County,
          North Carolina in Book 587, Pages 414 through 423.

    3.    October 12, 1965, filed and recorded with the Register of Deeds of Beaufort
          County, North Carolina in Book 591, Pages 401 through 408.

    4.    April 15, 1966, filed and recorded with the Register of Deeds of Beaufort County,
          North Carolina in Book 598, Pages 550 through 554.



Messrs. Bowman, Ambler and Cooper
November 20, 2003
Page 2

     5.     May 3, 1966, filed and recorded with the Register of Deeds of Beaufort County, North Carolina in Book 609, Pages 67 through 73.

PCS hereby notifies Norfolk Southern pursuant to the Relocation Agreements of its desire that the railroad track and right-of-way be moved to the locations specified in the enclosed engineering drawings. Such relocation must be initiated by mid-year 2005 and completed no later than mid-year 2007. In accordance with the Relocation Agreements, PCS shall grant Norfolk Southern a right-of-way and easement for the relocated track. Pursuant to the Relocation Agreements, Norfolk Southern shall complete the railroad relocation at its expense.

PCS's engineering representatives have determined the precise location for the new right-of-way and relocated track and are prepared to work with the engineering representatives of Norfolk-Southern to review the plans.

Please contact Jerry Waters or Tex Gilmore to discuss this matter further and to plan for the relocation.

Very truly yours,

PCS Phosphate Company, Inc.

By: W. T. Cooper, Jr.
    General Manager, Phosphate Operations

Distribution via e-mail without enclosures:

Norfolk Southern:
    Ken Yopp
    Thomas J. Brugman
    Steve D. Eisenach
    Danny D. Smith
    Dick Raup

PCS Phosphate Company, Inc.
    Thomas J. Regan, Jr.
    Cyril Eckl
    Mike Sylvester
    Jerry Waters
    Tex Gilmore
    Curtis Brown
    Keith Thornton
    Bob Markman
    Bob Thomas
    Ross Smith
    Joseph A. Podwika



**NORFOLK SOUTHERN**

Norfolk Southern Corporation
1500 Carson Street
Raleigh, North Carolina 27608

Carl D. Wilson
General Manager
East Carolina Business Unit

March 13, 2003

Bob Markman
PCS Phosphate
P. O. Box 48
Aurora, North Carolina 27806

RE: Lee Creek Line in Beaufort County, North Carolina - Possible relocation of Norfolk Southern Railway Company track

Dear Mr. Markman:

You contacted me about the efforts of PCS Phosphate seeking a permit from the North Carolina Division of Coastal Management to cross upper Whitehurst Creek with a relocated Norfolk Southern Railway Company main track, as that track would run from Highway 33 near Aurora to the PCS Phosphate plant site. You told me that the state wanted some sort of indication that NSR found the proposed route acceptable for a relocation.

As you know, NSR has not yet agreed to undertake any such track relocation and most certainly NSR has not agreed to pay for that track relocation effort. In our conversations and communications, you have acknowledged as much. As long as it is understood that NSR has made no commitments whatsoever about a track relocation, I am able to write that the route proposed by PCS Phosphate is in general terms acceptable to NSR, although NSR will obviously need to review and approve detailed plans as they become available.

Sincerely

Carl D. Wilson

Cc: D. D. Smith

Operating Subsidiary: Norfolk Southern Railway Company



M Sp̶
R. B̶
J. P̶

Kathryn B. McQuade
Executive Vice President Planning
& Chief Information Officer

Norfolk Southern Corporation
3 Commercial Place
Norfolk, Virginia  23510-2191
(757) 664-5077
(757) 533-4884  FAX

December 16, 2004

Thomas Regan
President, PCS Phosphate
PCS Potash Corp
PCS Sales (USA), Inc.
Suite 200, 1101 Skokie Boulevard
P.O. Box 3320
Northbrook, Illinois 60062

Dear Tom

    Norfolk Southern Railway Company committed at the July 30, 2004 meeting with Potash Corp in Chicago to explore potential sources of funding for the proposed Norfolk Southern Lee Creek branch track relocation. We have done so, but without success. We talked to the North Carolina Department of Transportation, the North Carolina Department of Commerce and CSX Transportation, Inc. None of these parties would commit to providing funding for the Lee Creek project.

    As we discussed at our July and previous meetings, since alternative funding sources have been sought but cannot be found, Norfolk Southern now needs to know if PCS will fund the relocation project. Norfolk Southern cannot economically justify bearing the costs of the relocation project. There is no guarantee, and no apparent likelihood under current rates, traffic levels and traffic commitments, that Norfolk Southern could recover those costs.

    I look forward to hearing from you, but if I do not hear from you by January 15, 2005, I will assume a negative response. I will then ask that our people begin to prepare an application to the STB to abandon the Lee Creek line.

                  Sincerely

                  *Kathryn B. McQuade*

cc

Dave Delaney
Cyril Eckl
Wick Moorman
Don Seale

Operating Subsidiary. Norfolk Southern Railway Company



Norfolk Southern Corporation
Three Commercial Place
Norfolk, Virginia 23510-9231
(757) 664-5077
(757) 533-4884 FAX

Kathryn B. McQuade
Executive Vice President Planning
& Chief Information Officer

February 11, 2005

Mr. Thomas J. Regan, Jr.
President
PCS Potash Corp
P.O. Box 3320
Northbrook, Illinois 60062

Re. *Aurora, North Carolina Track*

Dear Tom:

This letter responds to your correspondence of January 7, 2005 regarding the proposed relocation of the Lee Creek branch line that serves PCS Phosphate Company's Aurora operation. Norfolk Southern Railway Company has explored potential sources of funding for the proposed Lee Creek branch track relocation without success. We talked to the North Carolina Department of Transportation, the North Carolina Department of Commerce and CSX Transportation, Inc. None of these parties would commit to funding for the proposed Lee Creek track relocation project.

As we have discussed at previous meetings, Norfolk Southern cannot economically justify bearing the costs of the proposed relocation project. Under current rates and traffic levels Norfolk Southern operates this line at a loss; therefore we cannot economically justify the capital investment required for the proposed track relocation. Under the current rates and traffic levels, and with no guaranteed traffic commitment at a profitable rate for the future, Norfolk Southern would never be able to recover the costs of the proposed track relocation. If PCS would like to fund the proposed track relocation, we are happy to work with you to see that it is done.

We are available to meet with you to discuss the proposed project and PCS' funding. Norfolk Southern value's our companies' longstanding business relationship as much as you do, but cannot justify such a capital investment. Abandonment of a rail line is always Norfolk Southern's last option. If PCS is not willing to fund the proposed track relocation and Norfolk Southern cannot economically justify the funding, then we must begin the abandonment process before the Surface Transportation Board (STB). Since the STB has exclusive jurisdiction over the abandonment of rail lines based on sufficiency of income, its actions will preempt any purported obligation that your company believes otherwise exists. I hope to hear from you that PCS will fund the relocation, and when I do, I will stop the abandonment process even though Norfolk Southern operates the line at a loss.

Sincerely,

*Kathryn B. McQuade*