United States District Court
Eastern District of North Carolina
Eastern Division

Case No.: 4:05-CV-55-D

Plaintiff PCS Phosphate Company, Inc.'s
Memorandum of Law in
Support of Motion for Summary Judgment

# Exhibit 18

# Letter from Kathryn McQuade
# dated February 11, 2005

**Demarcation Page**



Norfolk Southern Corporation
Three Commercial Place
Norfolk, Virginia 23510-9231
(757) 664-5077
(757) 533-4884 FAX

Kathryn B. McQuade
Executive Vice President Planning
& Chief Information Officer

February 11, 2005

Mr. Thomas J. Regan, Jr.
President
PCS Potash Corp
P.O. Box 3320
Northbrook, Illinois 60062

  *Re. Aurora, North Carolina Track*

Dear Tom:

  This letter responds to your correspondence of January 7, 2005 regarding the proposed relocation of the Lee Creek branch line that serves PCS Phosphate Company's Aurora operation. Norfolk Southern Railway Company has explored potential sources of funding for the proposed Lee Creek branch track relocation without success. We talked to the North Carolina Department of Transportation, the North Carolina Department of Commerce and CSX Transportation, Inc. None of these parties would commit to funding for the proposed Lee Creek track relocation project.

  As we have discussed at previous meetings, Norfolk Southern cannot economically justify bearing the costs of the proposed relocation project. Under current rates and traffic levels Norfolk Southern operates this line at a loss; therefore we cannot economically justify the capital investment required for the proposed track relocation. Under the current rates and traffic levels, and with no guaranteed traffic commitment at a profitable rate for the future, Norfolk Southern would never be able to recover the costs of the proposed track relocation. If PCS would like to fund the proposed track relocation, we are happy to work with you to see that it is done.

  We are available to meet with you to discuss the proposed project and PCS' funding. Norfolk Southern value's our companies' longstanding business relationship as much as you do, but cannot justify such a capital investment. Abandonment of a rail line is always Norfolk Southern's last option. If PCS is not willing to fund the proposed track relocation and Norfolk Southern cannot economically justify the funding, then we must begin the abandonment process before the Surface Transportation Board (STB). Since the STB has exclusive jurisdiction over the abandonment of rail lines based on sufficiency of income, its actions will preempt any purported obligation that your company believes otherwise exists. I hope to hear from you that PCS will fund the relocation, and when I do, I will stop the abandonment process even though Norfolk Southern operates the line at a loss.

       Sincerely,

Operating Subsidiary  Norfolk Southern Railway Company

**Exhibit 18**

Plaintiff's Memorandum of Law in
Support of Motion for Summary Judgment
4:05-CV-55D

United States District Court
Eastern District of North Carolina
Eastern Division

Case No.: 4:05-CV-55-D

Plaintiff PCS Phosphate Company, Inc.'s
Memorandum of Law in
Support of Motion for Summary Judgment

# Exhibit 19

# Email Message from Steve D. Eisenach
# dated September 25, 2003

**Demarcation Page**

CONFIDENTIAL

**Eisenach, Steve D.**

| | |
|---|---|
| **From:** | Brugman, Thomas |
| **Sent:** | Tuesday, October 14, 2003 2:49 PM |
| **To:** | Eisenach, Steve D. |
| **Cc:** | Wilson, Carl D. |
| **Subject:** | RE: Combined costs for railroad relocation and removal (09-15-03 ltr & spreadsht) |

Steve:

I suggest you be the contact man with PCS through Cyril Eckl (cweckl@potashcorp.com). If you prefer to do a conference call, I can join you.

Tom Brugman

-----Original Message-----
From: Wilson, Carl D.
Sent: Tuesday, October 14, 2003 12:09 PM
To: Eisenach, Steve D.; Becker, David A.
Cc: Brugman, Thomas; Smith, Danny D.
Subject: RE: Combined costs for railroad relocation and removal (09-15-03 ltr & spreadsht)

Steve,

With this information, I would think we should now get back to PCS/Potash Inc and try to get CSX to the table in Chicago.

Carl

-----Original Message-----
From: Eisenach, Steve D.
Sent: Tuesday, October 14, 2003 8:41 AM
To: Becker, David A.
Cc: Wilson, Carl D.; Brugman, Thomas; Smith, Danny D.
Subject: RE: Combined costs for railroad relocation and removal (09-15-03 ltr & spreadsht)

Dave:

Thanks very much for your quick phone reply. For Carl Wilson's and Tom Brugman's sake, I'll repeat the voice mail you left me this morning:

    You have reviewed the Consultant's estimate, and based on
    what we know (not a whole lot), you came up with almost
    the exact same cost estimate based on some general assumptions.
    Bottom line, the consultant's $12.2 million estimate appears good.

Also for Carl's and Tom's sake, I note that below you advise that the work would be done by a contractor, not NS forces, other than the tie-ins to active track.

Thanks again.

Steve

========================

**Exhibit 19**

Plaintiff's Memorandum of Law in
Support of Motion for Summary Judgment
4:05-CV-55D

-----Original Message-----
From: Eisenach, Steve D.
Sent: Monday, October 13, 2003 3:39 PM
To: Becker, David A.
Subject: RE: Combined costs for railroad relocation and removal (09-15-03 ltr & spreadsht)

1

NS - 0000192

Dave:

Have you had an opportunity to look at this in more detail? PCS is asking.

Thanks.

Steve

-----Original Message-----
From: Becker, David A.
Sent: Sunday, September 28, 2003 5:04 PM
To: Eisenach, Steve D.
Subject: RE: Combined costs for railroad relocation and removal (09-15-03 ltr & spreadsht)

I'll try to look more closely at r-o-w prep situation early this week.

David A. Becker
ACE - Design, NSR

-----Original Message-----
From:      Eisenach, Steve D.
Sent: Thursday, September 25, 2003 10:42 AM
To:    Becker, David  A.
Subject:    RE: Combined costs for railroad relocation and removal (09-15-03 ltr & spreadsht)

Dave:

Thanks.  If I understand correctly, the $3.7 MM noted below is only for the track relocation work that the consultant estimated at $3.04 MM.  Is that correct?

I know you don't have much to work on, but any feel for the estimated $7.8 MM for the r-o-w preparation?.  I found that on the consultant's spreadsheet.

As info, when in Chicago, we told them our gut feeling was that the $12.2 million estimate was too low, and we wouldn't be surprised if the total price tag approached $15 to $20 million.

By the way, the 1966 agreement that the old NS signed commits the rr (now NSR) for the entire cost of the project, including preparatory work, and the 1977 agreement that brought Seaboard into Lee Creek was not tied to the 1966 agreement, so contractually, both PCS and CSX are completely off the hook for any of the cost.  That's why we're threatening abandonment unless all three parties contribute.

Steve

-----Original Message-----
From: Becker, David A.
Sent: Thursday, September 25, 2003 8:48 AM
To: Eisenach, Steve D.
Subject: RE: Combined costs for railroad relocation and removal (09-15-03 ltr & spreadsht)

Steve:

I would say the estimate for mainline relocation appears low.  The attachments had little detail as to split of work etc., but based solely on 8.2 miles of main track relocation (not including "side line" track...I don't know quantities), and assuming all engineering and roadbed work was done by PSC, I came up with ~$3.7 MM.  This assumes NS has to purchase the rail.

If NS could use internally generated rail the cost would be about ~$3.1 MM.

Work would be performed by a contractor not NS forces (except for tie-ins to active track)

2

NS - 0000193

# CONFIDENTIAL

As we do not have specific assumptions regarding who would perform what portion of overall relocation I caution you to
be careful using the numbers they have provided. Let me know if I can provide additional guidance.

David A. Becker
ACE - Design, NSR

-----Original Message-----
From:       Eisenach, Steve D.
Sent: Tuesday, September 23, 2003 11:31 AM
To:   Becker, David  A.
Subject:     FW: Combined costs for railroad relocation and removal (09-15-03 ltr & spreadsht)

<< File: 2001 059 09-15-03 T Gilmore Total NS RR Cost ltr.doc >> << File: 09-15-03 Combined Totals NS RR Track Site Track & Removal.xls >> << File: PCS 9-11-03.ppt >> Dave:

Could you have your folks review the attached track relocation estimate from PCS Phosphate's consultant? He has estimated $12.2 million to remove 6 miles of old track and relocate 8.2 miles of new. We told PCS that if NS has to build using NS forces, the price could be higher.

This involves the Lee Creek line, where NS is obligated to pay to relocate the track at PCS's request, which we'll officially be receiving shortly. Their plan is to ask NS to abandon the last 6 miles of track and build 8.2 miles of re-aligned track. At a recent meeting in Chicago, I managed to convince PCS's President that the obligation isn't worth much; we'd abandon first (see attached ppt if interested).

One final question. If NS were to rebuild the line, could we contract the work out or would we have to use NS forces? Is the cost estimate different?

Thanks.

Steve

-----Original Message-----
From: TGilmore@Pcsphosphate.com [mailto:TGilmore@Pcsphosphate.com]
Sent: Tuesday, September 16, 2003 1:15 PM
To: steve.eisenach@nscorp.com
Cc: tjregan@potashcorp.com; MSylvester@pcsnitrogen.com; JWaters@Pcsphosphate.com
Subject: Fwd:Combined costs for railroad relocation and removal (09-15-03 ltr & spreadsht)

Dear Mr. Eisenach:

At the request of Mr. Tom Regan, I am forwarding the cost estimate summary for the railroad relocation to you for your review. Mr. Robert M. Chiles has provided the cost estimate data. Please let me know if you require any further information or details.

"Tex" I. K. Gilmore CPG
Superintendent, Mine Planning
Chief Geologist
----- Forwarded by Tex Gilmore/Mine/Aurora/Phosphate/PCS on 09/16/03 12:56 PM -----

rmcengr@cconnect.
net                                    To:      TGilmore@Pcsphosphate.com
                                       cc:
09/16/03 09:53 AM                      Subject:  Combined costs for railroad
                                          relocation and removal (09-15-03 ltr &
                                          spreadsht)

NS - 0000194



(See attached file: 2001 059 09-15-03 T Gilmore Total NS RR Cost ltr.doc) (See attached file: 09-15-03  Combined Totals NS RR Track Site Track & Removal.xls)

United States District Court
Eastern District of North Carolina
Eastern Division

Case No.: 4:05-CV-55-D

Plaintiff PCS Phosphate Company, Inc.'s
Memorandum of Law in
Support of Motion for Summary Judgment

# Exhibit 20

# Verified Statement of David A. Becker
# dated October 12, 2005

**Demarcation Page**

VERIFIED STATEMENT
OF
DAVID A. BECKER


My name is David A. Becker. I am the Assistant Chief Engineer - Design of Norfolk Southern Corporation. My office is located at Norfolk Southern Railway Company's operating headquarters, 1200 Peachtree Street, NE, Atlanta, GA, 30309.

I graduated with a Bachelor of Science Degree in Civil Engineering from the Michigan State University in 1986. I am a licensed Professional Engineer, registered in seven states. I began my career with Norfolk Southern in 1986 as an Engineering / Maintenance-of-Way Management Trainee. Since that time I have continually served Norfolk Southern in a variety of field supervision, and engineering management positions directly related to the design, construction, and maintenance of the railway's infrastructure. I was named to my current position as Assistant Chief Engineer - Design in January 2000. My position reports to the Chief Engineer - Design & Construction and I have responsibility for all Civil Engineering design activities on the Norfolk Southern system. Since 1995, my duties have focused on the planning and implementation of projects which have expanded, connected, or modified the Norfolk Southern rail infrastructure. These projects have required development of detailed evaluations of construction scope and impact, budget estimation, and schedule analysis.

**Exhibit 20**
Plaintiff's Memorandum of Law in
Support of Motion for Summary Judgment
4:05-CV-55D

In September 2003 I received a copy of the construction estimate prepared by Robert M. Chiles, P. E. on behalf of PCS Phosphate, Inc. for relocation of the track used to serve the PCS facility at Lee Creek, NC. The estimate, which is attached at Appendix 1 to this statement, included what I understood to be the cost to remove six miles of existing track and associated structures and to perform site preparation for and construct a total of 8.2 track miles, including sidings, of new track on a different alignment. The new track alignment is approximately two and one-half miles away from the old alignment at its most distant point. The total cost shown is $12,218,929.

For purpose of comparison, NS reviewed potential project costs utilizing available information, a reasoned assumption of quantities, and NS's typical unit costs. Based on this effort my office determined that the PCS estimate appeared to be of reasonable magnitude.

Verification

I, David A. Becker, verify under penalty of perjury that I am Assistant Chief Engineer Design of Norfolk Southern Corporation, that I have read the foregoing document and know its contents, and that the same is true and correct to the best of my knowledge and belief.

Executed on October 12, 2005

_do g. Sh_
David A. Becker

United States District Court
Eastern District of North Carolina
Eastern Division

Case No.: 4:05-CV-55-D

Plaintiff PCS Phosphate Company, Inc.'s
Memorandum of Law in
Support of Motion for Summary Judgment

# Exhibit 21

# Email Message from Thomas Brugman
# dated September 17, 2003

**Demarcation Page**

## Jennifer Bailey

| | |
|---|---|
| **From:** | Brugman, Thomas [tjbrugma@nscorp.com] |
| **Sent:** | Monday, September 22, 2003 3:59 PM |
| **To:** | Emery, Brook |
| **Cc:** | Yopp, Ken |
| **Subject:** | FW: FW: PCS; Lee Creek NC track relocation |

Brook:

Want you to contact Coleman Lawrence and determine what level of rates we need to justify retaining the Lee Creek line and how long it will take us to reach those levels.

I intend to forward your results to DWS.

TJB

-----Original Message-----
From: Seale, Don
Sent: Wednesday, September 17, 2003 8:47 AM
To: Osborne, Joe; Brugman, Thomas
Subject: RE: FW: PCS; Lee Creek NC track relocation

Joe and Tom: I couldn't agree more. Grab Coleman Lawrence in Finance and work through the analysis to determine the threshold. DWS

-----Original Message-----
From: Osborne, Joe
Sent: Wednesday, September 17, 2003 8:18 AM
To: Brugman, Thomas; Seale, Don
Subject: RE: FW: PCS; Lee Creek NC track relocation

Don and Tom:

I have one other comment, but a comment that I think is critical:

We (NS) need to agree on what our point of economic indifferencde is for the Lee Creek location:

  - this could be in the form of traffic minimums with certain rate floors; or,
  - usage fees to pay us for the capital embedded in our ROW; or,
  - other options that meet out ROA need.

Otherwise, the only solution that makes sense is to exit the market. Said another way, we have the leverage at this point (the exit market threat) to get an acceptable economic result.

(By the way, the solutions below which involve CSX's capital contribution should result in CSX having to make a similar analysis and market exit decision process.)

This analysis is also critical for another reason: the Lee Creek market decision is the linch pin of the 1/1/2005 bundled bid

**Exhibit 21**

Plaintiff's Memorandum of Law in
Support of Motion for Summary Judgment
4:05-CV-55D

NS - 0000841

decision that Tom outlines below.

I suggest that look at this as a capital investment question, and ask Finance to assist us in find the options which identify our point of indifference.

Joe

----Original Message-----
From:       "Brugman, Thomas" <tjbrugma@nscorp.com>
To:         "Seale, Don" <dwseale@nscorp.com>
Cc:         "Osborne, Joe" <jcosbor2@nscorp.com>
Bcc:
Subject:    FW: PCS; Lee Creek NC track relocation
Type:       IPM.Note
Date:       Friday, September 12, 2003 1:58 PM

DWS:

In addition to the PCS relocation issue, Chemical and AG marketing also met today to discuss rate strategy for PCS commodities to/from Lee Creek, NC and Occidental FL

Our long term strategy will be to "package" all commodities and point pairs for this account by January 1, 2005; coinciding with the expiration of the CSX transfer facility contract at Lake City FL. This will create a master contract for PCS. Numerous fertilizer contracts and rates are involved and will be extended to be up for renegotiation in the first part of 2005.

This should take maximum advantage of our following strengths:

*       local business
*       extended switching services primarily at Lee Creek but also some at Occidental FL
*       phos rock handling at Occidental.
*       Two carrier service at Lee Creek.

We will lever for maximum advantage on competitive business at improved returns.

Much of this strategy is still developing. Joe and I will keep you advised.

                        TJB


-----Original Message-----
From:  Brugman, Thomas
Sent:  Friday, September 12, 2003 1:44 PM
To:    Seale, Don
Cc:    Eisenach, Steve D.; Wilson, Carl D.; Yopp, Ken; Emery, Brook; Osborne, Joe; Raup, Dick
Subject:    PCS; Lee Creek NC track relocation

DWS:

Met with PCS' Tom Regan, President PCS Phosphate; Cyril Eckl, VP Transp & Distribution; and Mike Sylvester on 9/11/03 in Northbrook IL. NS representation included Steve Eisenach and Carl Wilson, ECBU. Purpose of the meeting was to discuss NS options should we be required to pay for the track relocation project at Lee Creek, NC.


1/20/2006

The Outcome of the meeting was quite positive.

PCS gave their own presentation regarding plans for moving the dragline and 6 year fertilizer market review. NS then ran through its options at Aurora/Lee Creek.

By the end of the meeting, Tom Regan had given initial agreement to the following:

\*    PCS to work with NS to maintain 2 carrier service and use PCS' influence to have CSX contribute to future line maintenance. A follow-up meeting for this subject will be scheduled for mid-October. Open dates now being exchanged.

\*    PCS to work with NS and CSX to devise a workable service plan during upcoming trackwork on the Greenville-Lee Creek line. Proposal to have NS perform all service to the Lee Creek facility with per car charge to CSX will also be considered. Proposal has PCS support. Follow-up meeting tentatively scheduled for October 9th in North Carolina. AG Marketing will be represented. Carl Wilson handling.

\*    NS to re-examine the possibilities for lower cost construction at the Lee Creek facility -- PCS to consider doing the work itself -- NS to examine ways to facilitate PCS doing work without involving NS labor. Steve Eisenach handling.

\*    NS to respond to PCS on proposed Coastal Bio-Refinery project at Beaufort, NC. PCS hopeful that a new ethanol refinery will change economics of the Lee Creek line for NS and take pressure off PCS. Outlook: POOR. AG Marketing will respond with its views shortly.


ADDITIONAL INFO.

NS track must be relocated in a window ranging from 2005 to mid 2007.
Formal advice of relocation has not been received, but Tom Regan mentioned NS was verbally advised in Atlanta in 1999 that this project was approaching.

Changes will produce 5.2 million tons of phosphate over 195 acres of land.
Highway relocation to cost $7.6 million.
Rail relocation to cost $11 million.
Power line relocation to cost $16.8 million.
Zero rail carrier access at Lee Creek not acceptable to PCS.
Single rail carrier access at Lee Creek not acceptable to PCS.
(SDE): two acceptable methods of CSX investment in maintenance of line costs:
\*    CSX pays lump sum up front.
\*    CSX pays per car charge and "NS swallows real hard and pays up front."


Overall, PCS seemed to accept the NS argument that we could not be forced to pay for the track relocation and appears to be working with us to find another solution. Will advise of any developments or changes.


Tom Brugman

United States District Court
Eastern District of North Carolina
Eastern Division

Case No.: 4:05-CV-55-D

Plaintiff PCS Phosphate Company, Inc.'s
Memorandum of Law in
Support of Motion for Summary Judgment

# Exhibit 22

# Email Message from Jim W. McClellan
# dated October 30, 2003

**Demarcation Page**

**Jennifer Bailey**

| | |
|---|---|
| **From:** | Brugman, Thomas [tjbrugma@nscorp.com] |
| **Sent:** | Monday, November 03, 2003 9:10 AM |
| **To:** | Manning, Cheryl |
| **Subject:** | FW: Conference call re PCS track location |
| **Flag Status:** | Flagged |

Info.   TJB

-----Original Message-----
**From:** McClellan, Jim W.
**Sent:** Thursday, October 30, 2003 11:31 AM
**To:** Seale, Don; Brugman, Thomas; Eisenach, Steve D.; Wilson, Carl D.
**Cc:** Raup, Dick; Moorman, Wick; Mazur, Dan M.; Yopp, Ken; Smith, Danny D.
**Subject:** RE: Conference call re PCS track location

ALL: Sounds like the time for talking is over and we need to go ahead and put the abandonment case together. The next meeting should be a courtesy call to PCS stating that this is the way we are heading. Then we simply do not call anymore and when they ask the status it is "the case is being prepared for filing on X date. See you in court."

We had to use this approach on what is still the abandonement of the Omaha line (222 miles and a much bigger deal than the Lee Creek line). Folks did not think that we were serious so we did all the work, then made the rounds with the very impressive filing and said " we are willing to talk for another month, then we file." It was only then that we really got their attention. While our case was far from airtight, it looked impressive enough to get folks to the table.

jwm

    -----Original Message-----
    **From:** Seale, Don
    **Sent:** Wednesday, October 29, 2003 4:03 PM
    **To:** Brugman, Thomas; Eisenach, Steve D.; Wilson, Carl D.
    **Cc:** Raup, Dick; McClellan, Jim W.; Moorman, Wick; Mazur, Dan M.; Yopp, Ken; Smith, Danny D.
    **Subject:** RE: Conference call re PCS track location

    TJB:  We can explore the idea below, but we need to review the economics of the proposal first. DWS

        -----Original Message-----
        **From:** Brugman, Thomas
        **Sent:** Tuesday, October 28, 2003 3:23 PM
        **To:** Eisenach, Steve D.; Wilson, Carl D.
        **Cc:** Raup, Dick; McClellan, Jim W.; Moorman, Wick; Mazur, Dan M.; Yopp, Ken; Smith, Danny D.; Seale, Don
        **Subject:** RE: Conference call re PCS track location

        Steve:
        Carl:

        It appears we've lost a bit of ground since our visit to PCS in September.  I checked my notes and Regan did agree at that time to consider paying for the project himself.

        Looks like PCS has had time to regroup and is now trying to distance itself from the $12 million

**Exhibit 22**

Plaintiff's Memorandum of Law in
Support of Motion for Summary Judgment

NS - 000075ᵍ

cost of track relocation derby. PCS Transportation is going to play this like they would any other competitive contract - a jump ball between NS and CSX. I think your instincts are good and NS should NOT initiate a one-on-one meeting with CSX for the cost of the track relocation project. It doesn't sound like placing Lee Creek on the "doomed branchline list" has frightened PCS very much either. The next move we make may be critical.

I suggest a second visit to PCS, Northbrook -- using the same team -- to present them with an either/or proposal: the "or" being formal abandonment by a predetermined date. The alternative would be a long term (requiring DWS approval) contract per car refund of $25 per car over 10 years, capped at $4,000,000. This would require PCS to pay all track relocation expenses up front and refunds would commence when all work was complete. The advantages of the long term approach: they don't get their money unless we get the required business and the speed of their payback is determined by how much business they move on NS year by year. Of course, most of their existing business at Lee Creek is marginal or unprofitable, but the refund plan does not preclude NS from raising rates in the future and also requires no money up front.

Comments?

Tom Brugman

-----Original Message-----
From: Eisenach, Steve D.
Sent: Tuesday, October 28, 2003 12:24 PM
To: Yopp, Ken; Smith, Danny D.; Brugman, Thomas
Cc: Raup, Dick; Wilson, Carl D.; McClellan, Jim W.; Moorman, Wick; Mazur, Dan M.
Subject: RE: Conference call re PCS track location

All:

This is to add to Ken's note below.

I had intended to write up my phone conversation last Wednesday with PotashCorp's Cyril Eckl (VP Transportation) and Mike Sylvester (Director Transportation), but intentions didn't turn to action.

I called Cyril because I had not received acknowledgment of my 10-15 e-mail to him (which he confirmed he had received). The rest of our conversation made me uneasy. Cyril and Mike said that they'd help to arrange a meeting between NS and CSX, but they saw no reason for PotashCorp to be there. I disagreed, saying that a solution would require all three parties, not just the two railroads.

I did say if they didn't want to be in the first meeting, I certainly can't force them to be there, but they needed to recognize that sooner or later, they will have to be part of the solution. I reiterated the poor economics and trends for NS at Lee Creek and reminded them that even if all 3 parties came to the table, there is no guarantee that NS will be able to justify our share of the $12.2 million track relocation price tag, thus our reason for putting the Lee Creek line in Category 1 on our new System Diagram Map (now filed w/the STB). At that point, Cyril said "we'll do what we'll have to do" (which to me sounded like they're still in denial, but are coming around to the notion that they'll have to contribute financially to get this resolved, something that I thought we had achieved in our Chicago visit).

We left it that Cyril or Mike would call Ken, which they did. However, at no time in our conversation did they mention a letter to CSX advising that CSX is responsible for 50% of the relocation costs (and by inference, NS is responsible for the other half). We did not discuss such a letter nor did I ever agree to such a concession.

Steve

1/20/2006

NS - 0000760

-----Original Message-----
**From:** Yopp, Ken
**Sent:** Tuesday, October 28, 2003 12:01 PM
**To:** Smith, Danny D.; Eisenach, Steve D.; Brugman, Thomas
**Cc:** Raup, Dick
**Subject:** Conference call re PCS track location

All

I talked to Mike Sylvester last week and he requested I write a letter to CSX formally informing them that they will be expected to pay a portion of the upcoming relocation of the line serving the Lee Creek plant. Mike suggested that the letter should indicate that CSX will be expected to pay 50% of the relocation cost with NS being responsible for the other 50%. This is not what I understood we had in mind for this line and in a conversation with Steve this morning; he agrees that this was in no way discussed either at your meeting in Chicago or on his telephone conversation with Cyril and Mike last week. I do feel we need to formally notify CSX that they will be expected to pay a portion of this cost and would like to have a teleconference with all copied on Monday November 3 at 10:00am to discuss this. Tom Brugman and Steve Eisenach have indicated that they will be available, is this date and time ok with you Danny? If so, TJB and I will call you next Monday.

Ken

Cc: Dick Raup


Ken Yopp
Director Marketing
Agricultural Products & Fertilizer
540-985-6794

1/20/2006

United States District Court
Eastern District of North Carolina
Eastern Division

Case No.: 4:05-CV-55-D

Plaintiff PCS Phosphate Company, Inc.'s
Memorandum of Law in
Support of Motion for Summary Judgment

# Exhibit 23

# Excerpts from Deposition of Benton V. Fisher
# dated June 22, 2006

**(The complete transcript will be submitted in paper form with the court)**

**Demarcation Page**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

EASTERN DIVISION

Civil Action No. 4:05-CV-55-(D)

PCS PHOSPHATE COMPANY, INC.,                )
            Plaintiff;                       )
                                             )
    v.                                       )
                                             )
NORFOLK SOUTHERN CORP.                       )
AND NORFOLK SOUTHERN                         )
RAILWAY COMPANY, INC.                        )
            Defendant.                       )

---

DEPOSITION OF BENTON V. FISHER

---

In Raleigh, North Carolina

Thursday, June 22, 2006

Reported by Janet M. Leggett

# COPY

Worley Reporting

8410 Six Forks Road, Suite 104

Raleigh, North Carolina 27615

Telephone (919) 870-8070        Facsimile (919) 957-8393

info@worleyreporting.com

**Exhibit 23**

Plaintiff's Memorandum of Law in
Support of Motion for Summary Judgment
4:05-CV-55D

1     previously found in the blue row is 1.26.

2  Q    Okay.  And is this -- if you'll look up at the top,

3      it says "Originated Traffic."  So is this traffic

4      that's outgoing from the PCS facility?

5  A    I believe so.

6  Q    Okay.  So does this report show that for the year

7      July 1, 2004, through June 30th of 2005, that

8      actually in the outgoing traffic, that Norfolk

9      Southern exceeded its variable cost on this line by

10      26 percent?

11  A    That's what this report would indicate.

12  Q    Okay.  And this is a report that was prepared by --

13      by Norfolk Southern.  How does that compare to what

14      you said in your report that the PCS traffic

15      doesn't cover the variable cost by Norfolk

16      Southern?

17  A    This number, 1.26, differs significantly from the

18      historical pattern in the revenue-to-variable cost

19      ratio that was revealed in the documents NS

20      produced in discovery.  For the period from 1994

21      through 2003 or '4, there were rarely ratios in

22      excess of 1 and certainly not above 1.1.

23  Q    But for the particular year, the July 1, 2004,

24      through June 30 of 2005, it's true that they did --

12

```
 1            they didn't just meet their variable cost of

 2            service, they exceeded it by 26 percent?

 3   A        For the outbound traffic.

 4                      MR. THOMPSON:  Okay.  I'm going to have

 5            another exhibit marked Exhibit Number 65.  And for

 6            the attorneys, instead of putting another hundred-

 7            page document together, this is just the last page

 8            of the incoming traffic.

 9            _____

10                      (EXHIBIT NUMBER 65

11                      MARKED FOR IDENTIFICATION)

12            _____

13   Q        (Mr. Thompson)  Mr. Fisher, this is Exhibit Number

14            65.  This is the totals line for the incoming

15            traffic.  It was derived from a similar filing that

16            Norfolk Southern made with the Surface

17            Transportation Board for the incoming traffic into

18            the PCS facility.  What does it show on the

19            variable cost ratio?

20   A        (Examines document.)  The ratios of revenue to

21            variable cost in this report for the subset of the

22            traffic inbound to the Aurora plant is 1.08 and

23            1.04.

24   Q        Okay.  So the 1.08 number on the ratio of the
```

United States District Court
Eastern District of North Carolina
Eastern Division

Case No.: 4:05-CV-55-D

Plaintiff PCS Phosphate Company, Inc.'s
Memorandum of Law in
Support of Motion for Summary Judgment

# Exhibit 24

# Surface Transportation Board Decision
# dated December 6, 2005

**Demarcation Page**

SERVICE DATE – DECEMBER 7, 2005

SURFACE TRANSPORTATION BOARD

DECISION

STB Docket No. AB-290 (Sub-No. 262)

NORFOLK SOUTHERN RAILWAY COMPANY–ABANDONMENT–
IN BEAUFORT COUNTY, NC

Decided: December 6, 2005

On November 17, 2005, Norfolk Southern Railway Company (NSR) filed with the Board an application under 49 U.S.C. 10903 for permission to abandon a line of railroad extending from milepost WL-26.7, near Aurora, to milepost WL-31.3, near Lee Creek, a distance of 4.6 miles, in Beaufort County, NC. The application indicates that the line is located on property that is owned by the only shipper using this line: PCS Phosphate Company, Inc. (PCS), which operates one of the world's largest phosphate mines at Aurora.

The line was built in 1965 by NSR's predecessor under authority granted in Norfolk S. Ry. Co. Construction and Operation, 324 I.C.C. 371 (1965). PCS's predecessor evidently negotiated several agreements with the carrier that included five easements granting rights to the carrier to build the line. The easements also contained provisions that allegedly obligated the carrier to relocate the right-of-way and rail line at its expense, should PCS subsequently determine that the line interfered with mining or processing operations at its facility.

The application indicates that PCS has notified NSR that the track and right-of-way needs to be relocated by mid-2007 to accommodate its mining operations. In the application, NSR asserts that it is seeking abandonment authority because it cannot financially justify acceding to PCS's demand to reconstruct the line at NSR's sole expense.

Under 49 CFR 1152.24(e)(2), the Board must reject an application if we determine that the application is substantially incomplete or that its filing is otherwise defective. Pursuant to that provision, we must reject the application filed in this proceeding.[1]

---

[1] On November 22, 2005, PCS filed a motion to dismiss or reject the application, and NSR filed a letter in response on December 2, 2005. Given our action here, PCS's motion is now moot.

**Exhibit 24**
Plaintiff's Memorandum of Law in
Support of Motion for Summary Judgment
4:05-CV-55D

The application is premature and incomplete. NSR's application is based on the assumption that it would be obligated to expend approximately $12.2 million to relocate the line. NSR includes that reconstruction cost in its forecast-year projection. However, NSR's obligation for this expenditure is uncertain at this time. On May 6, 2005, PCS filed suit in the United States District Court for the Eastern District of North Carolina, contending that NSR has breached a contractual obligation to relocate the line. NSR is actively contesting the court action. In view of the pending court litigation, NSR should not claim relocation costs as a burden on continued operation unless the court determines that it is obligated to pay to relocate the line. Because PCS does not need the line relocated until mid-2007, there is ample time for the court to resolve the contractual dispute.

In its application, NSR requests that the Board find that the pending court action is preempted by 49 U.S.C. 10501(b), which gives the Board plenary and exclusive jurisdiction over railroad transportation and abandonments, and that the provisions in the easements regarding relocation of the line are void as against public policy. But at this point it is not clear that the court action would interfere with our exclusive jurisdiction over rail transportation, given NSR's alleged consent to the parties' purported contractual arrangement. See The Township of Woodbridge, NJ, et al. v. Consolidated Rail Corporation, Inc., STB Docket No. 42053 (STB served Dec. 1, 2000, and Mar. 23, 2001). Moreover the appropriate means for seeking a preemption determination by the Board is to file a petition for a declaratory order prior to filing for abandonment. See Union Pacific Railroad Company–Petition for Declaratory Order, STB Finance Docket No. 34090 (STB served Nov. 9, 2001).

The application indicates that 62% of PCS's traffic is moved by CSX Transportation, Inc. (CSXT) under trackage rights over the line that were approved in Carolina and Northwestern Railway Company–Norfolk Southern Railway Company, and Southern Railway Company Control, Finance Docket No. 27078 (ICC served Nov. 23, 1978). But CSXT has not joined in the abandonment application, and it is well settled that NSR could not eject CSXT from the line without Board approval. Assuming that CSXT wants to continue providing this service, the application does not explain how CSXT could continue operations if NSR were permitted to abandon the line.

Finally, the Board's Section of Environmental Analysis (SEA) has reviewed the Environmental and Historic Reports submitted by NSR as part of its application and has identified several deficiencies in the Environmental Report. Specifically, the Board's environmental rules require that the Environmental Report include an estimate of the amount of rail traffic that could be diverted to other rail lines or other transportation modes as a result of the proposed abandonment (see 49 CFR 1105.7(e)(2)). While NSR has estimated the amount of rail traffic that could be diverted to truck, barge, barge-truck or barge-rail movements in the Environmental Report, this estimate does not appear to include the rail traffic currently transported by CSXT. As a result, the Environmental Report does not address all of the traffic that is currently on the line.

2

NSR's discussion in the Environmental Report of energy, air, and noise, as required by 49 CFR 1105.7(e)(4)-(6), estimates that approximately 4% of the rail traffic NSR currently moves over the line would be diverted to truck and that the rest of the traffic would be diverted to barge, barge-truck or barge-rail. NSR states that the basis for its estimate is the assumption "that stoker coal and commodities moving to and from the PCS facility in low volumes via NSR rail would be diverted to truck and those commodities shipped or received in higher volumes, which are known to be shipped via barge, would move via barge, barge-truck or possibly even barge-rail to and from the barge slip on PCS property" (see NSR Application, Volume III, p. 7). NSR does not provide supporting data or information for this assumption. Thus, SEA cannot independently verify the accuracy of NSR's calculations. Given the amount of rail traffic currently moving over the line, SEA is concerned that, should NSR's assumption and associated calculations of diversions to truck traffic be incorrect, the proposed action could exceed the Board's thresholds for conducting the detailed air and noise analysis required by 49 CFR 1105.7(e)(5) and (6).[2]

In addition, NSR's application indicates that hazardous materials are currently transported over the line. However, the Environmental Report, while including a general discussion of potential impacts on public health and safety, as required by 49 CFR 1105.7(e)(7), does not specifically discuss potential impacts to public health and safety that could result from a diversion of the transportation of hazardous materials to other modes. See 49 CFR 1105.7(e)(7)(ii).

Due to these deficiencies in the Environmental Report, the Federal, state, and local agencies with whom NSR consulted during preparation of the Environmental and Historic Reports were not given complete information regarding the proposed abandonment. Thus, SEA cannot adequately assess the appropriateness of the comments received from those agencies, or determine whether the agencies' comments would have differed had the agencies had more detailed information.

In view of all of these deficiencies, we find that NSR's application is substantially incomplete and defective. Accordingly, the application must be rejected.

This action will not significantly affect the quality of the human environment or the conservation of energy sources.

---

[2] The North Carolina Department of Transportation has submitted a letter, included in Appendix C of NSR's Environmental Report, indicating that the abandonment of the rail line could lead to 30,000 truck trips per year, which is far beyond the Board's 50-truck-per-day threshold.

<u>It is ordered</u>:

1. NSR's application is rejected.

2. This decision is effective on the service date.

By the Board, Chairman Nober, Vice Chairman Buttrey, and Commissioner Mulvey.


Vernon A. Williams
Secretary


4

United States District Court
Eastern District of North Carolina
Eastern Division

Case No.: 4:05-CV-55-D

Plaintiff PCS Phosphate Company, Inc.'s
Memorandum of Law in
Support of Motion for Summary Judgment

# Exhibit 25

# Defendants' Responses to Plaintiff's First Set of Interrogatories to Defendants dated November 17, 2005

**Demarcation Page**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No. 4:05-CV-55-D

| | | |
|---|---|---|
| PCS PHOSPHATE COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **DEFENDANTS' RESPONSES TO** |
| v. | ) | **PLAINTIFF PCS PHOSPHATE** |
| | ) | **COMPANY, INC.'S FIRST SET** |
| NORFOLK SOUTHERN CORP. | ) | **OF INTERROGATORIES TO** |
| AND NORFOLK SOUTHERN | ) | **DEFENDANTS** |
| RAILWAY COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants

Norfolk Southern Corporation and Norfolk Southern Railway Company, Inc. hereby

respond to Plaintiff PCS Phosphate Company, Inc. ("PCS") First Set of Interrogatories

from PCS's attorneys, R. Bruce Thompson, II, Jeffrey A. Bandini, and Charles E. Raynal,

IV of Parker, Poe, Adams & Bernstein, LLP, Wachovia Capitol Center, 150 Fayetteville

Street Mall, Suite 1400, Raleigh, North Carolina 27602, as follows:

## GENRAL OBJECTIONS

Defendants object to the definitions and instructions which appear in Plaintiff's

discovery requests to the extent that they might be construed to impose any duty on

Defendants in responding to these requests other than as provided in the North Carolina

Rules of Civil Procedure.

Defendants generally object to these discovery requests to the extent that they may

be construed to request confidential communications with counsel of record concerning

**Exhibit 25**
Plaintiff's Memorandum of Law in
Support of Motion for Summary Judgment
4:05-CV-55D

Case 4:05-cv-00055-D   Document 36-13   Filed 10/16/06   Page 30 of 53

this litigation, or information in all documents created or prepared in anticipation of litigation or for trial, on the grounds that such information and documents are protected by the attorney-client and/or work product privileges, or are otherwise outside the scope of Rule 26 of the Federal Rules of Civil Procedure.

## INTERROGATORIES

1.    State the date and describe in detail each meeting between NS and PCS in which the actual or possible relocation of a portion of the Lee Creek Rail Line was discussed, and identify each person who was present for each such meeting.

**RESPONSE:**

Objection: This interrogatory is unduly burdensome. Plaintiff would have been present at any such meeting. Plaintiff is capable of obtaining the same information on its own time and expense. Without waiving said objections, please see documents produced in response to Request for Production # 5.

2.    State the date and describe in detail each meeting between NS and PCS in which the actual or possible abandonment of all or a portion of the Lee Creek Rail Line was discussed, and identify each person who was present for each such meeting.

**RESPONSE:**

Objection: This interrogatory is unduly burdensome. Plaintiff would have been present at any such meeting and would have equal knowledge. Plaintiff is capable of obtaining the same information on its own time and expense. Without waiving said objections, please see documents produced in response to Request for Production # 5.

3.      Identify each person who participated in any discussion or decision regarding PCS's request that NS relocate or pay the cost of relocating any portion of the Lee Creek Rail Line, and summarize each such person's involvement in any such discussions or decisions.

**RESPONSE:**

Objection: This request is overly broad, unduly burdensome, not properly limited as to scope and time, and seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence at the trial of this matter. Further, this request seeks attorney work product materials prepared in anticipation of litigation and materials protected pursuant to the attorney-client privilege. Without waiving said objections, other than counsel, the following individuals would have been the most involved in such discussions and decisions:

> Kathryn B. McQuade – Executive VP Planning & Chief Information Officer
> Norfolk Southern Corporation
> Three Commercial Place
> Norfolk, VA 23510

Marc C. Kirchner – Director of Strategic Planning
Norfolk Southern Corporation
Three Commercial Place
Norfolk, VA 23510

Wick Moorman – President and Chief Executive Officer
Norfolk Southern Corporation
Three Commercial Place
Norfolk, VA 23510

Don Seale – Executive Vice President Sales and Marketing
Norfolk Southern Corporation
Three Commercial Place
Norfolk, VA 23510

Tom Brugman – GVP/Agriculture
Norfolk Southern Corporation
110 Franklin Road, S.E.
Roanoke, VA 24042-0026

Richard D. Raup – National Account Manager
Norfolk Southern Corporation
Chicago, IL

Mark M. Owens
Senior Director of Joint Facilities
Norfolk Southern Corporation
1200 Peachtree Street NE
Atlanta Georgia 30309

Joe Osborne, Jr.
Group Vice President-Chemicals
Norfolk Southern Corporation
110 Franklin Road, S.E.
Roanoke, VA 24042-0026

David A. Becker – Assistant Chief Engineer Design
Norfolk Southern Corporation
Three Commercial Place
Norfolk, VA 23510

Danny Smith
Senior Vice President - Energy & Properties
Norfolk Southern Corporation
Three Commercial Place
Norfolk, VA 23510

Carl Wilson – Division Superintendent
Norfolk Southern Corporation
110 Franklin Road S.E.
Roanoke, VA 24042

Durwood Laughinghouse
Resident Vice-President
Norfolk Southern Corporation
1500 Carson Street
Raleigh, NC 27608

Coleman Lawrence –Director of Financial Planning
Norfolk Southern Corporation
Three Commercial Place
Norfolk, VA 23510

Stephen H. Morrell – Director Cost and Engineering Systems/Engineering
Department
Norfolk Southern Corporation
1200 Peachtree Street NE
Atlanta, GA 30309

Steve D. Eisenach – Director Public Partnership/Strategic Planning Department
(now deceased)
Norfolk Southern Corporation
Three Commercial Place
Norfolk, VA 23510


The above mentioned individuals may have had discussions including, but not limited to, the following subjects: profitability, or lack thereof, of the Lee Creek Rail Line; revenues generated on the Lee Creek Rail Line; costs associated with relocation of the Lee Creek Rail Line; costs associated with service to the PCS Aurora facility; meetings between Norfolk Southern personnel and PCS personnel regarding relocation of the Lee Creek Rail Line and discussions regarding abandonment of a portion of the Lee Creek Line. Also, please see documents produced.

4.     Identify each person who participated in any discussion or decision by NS regarding the actual or possible abandonment of any portion of the Lee Creek Rail Line, and summarize each such person's involvement in any such discussions or decisions.

**RESPONSE:**

See response to Interrogatory # 3.

5.     Identify and describe in detail all agreements, deeds, covenants, waivers, correspondence, or other documents that refer to, relate to, or bear on the enforceability of the relocation provisions of the Deeds of Easement.

**RESPONSE:**

Objection to the extent this Interrogatory seeks attorney work product materials, materials prepared in anticipation of litigation and materials protected by the attorney-client privilege. Without waiving said objections, Defendant has produced all the non-privileged and/or all non work product documents it has in its possession that are responsive to this Interrogatory in its responses to Plaintiff's Request for Production.

6.     Identify each NS representative or third party who has performed or prepared any analysis or study of the actual or possible relocation of any portion of the Lee Creek Rail Line, including any analysis or study of the cost of relocating any portion of the Lee Creek Rail Line, and describe the subject matter of any such analysis or study.

**RESPONSE:**

Objection to the extent this Interrogatory seeks attorney work product materials, materials prepared in anticipation of litigation and materials protected by the attorney-client privilege. Without waiving said objections, see documents and e-mails produced in response to Request for Production of Documents # 9. Coleman Lawrence and Steve Eisenach were primarily responsible for such analysis and the production of the relevant documents. David Becker also reviewed Robert Chiles' engineering report.

7.    Identify each person who may have personal knowledge regarding the drafting and formation of the Relocation Agreements, and summarize the knowledge of each such person.

**RESPONSE:**

Defendant knows of no one currently alive who would have such information.

8.    Identify each person who may have personal knowledge regarding any obligations of PCS, NS, or any third party under the Relocation Agreements, and summarize the knowledge of each such person.

**RESPONSE:**

Objection. This request is overly broad and unduly burdensome. Defendant further objects to the extent this request seeks the mental impressions of defense counsel and on the grounds that the terms of the documents speak for themselves.

9. Identify each person to whom NS has communicated its actual or alleged intention to abandon any portion of the Lee Creek Rail Line, state the date of such communications, and summarize the circumstances and substance of each such communication.

**RESPONSE:**

At various meetings beginning in year 2002, between Norfolk Southern and Plaintiff, the possibility of abandonment was discussed. On December 16, 2004 and February 11, 2005, Kathryn McQuade informed Thomas Regan of PCS of the possibility of Norfolk Southern abandoning the Aurora Lee Creek Rail Line. See attached letters. Also, please see October 18, 2005 Notice of Intent to Abandon Rail Service letter from Defendant to the Surface Transportation Board that has been produced in response to Request for Production # 3.

10. State the revenues (on an annual basis) that NS has received from PCS or any third party for rail access or services provided along the Lee Creek Rail Line from 1964 through the present.

**RESPONSE:**

Objection. This request is overly broad, unduly burdensome, not properly limited as to scope and time, and seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence at the trial of this matter. Without waiving said objections, please see documents produced in response to Request for Production # 12.

11.    State the costs NS incurred in connection with obtaining the easements at issue in this case, and describe any other consideration NS provided in connection with the Relocation Agreements.

**RESPONSE:**

The easement agreements speak for themselves as to the terms of consideration. Plaintiff, and/or its predecessor(s), was a party to the easement agreements and would have equal knowledge.

12.    State the costs (on an annual basis) NS has incurred to maintain and/or improve the Lee Creek Rail Line from 1964 through the present.

**RESPONSE:**

Objection. This request is overly broad, unduly burdensome, not properly limited as to scope and time, and seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence at the trial of this matter. Without waiving said objections, see documents produced in response to Requests for Production #'s 11, 12 and 14 regarding costs.

13.    State the date on which NS first decided to attempt to abandon any portion of the Lee Creek Rail Line, and identify all documents that refer or relate to that decision.

**RESPONSE:**

Objection. This request is overly broad, unduly burdensome and seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence at the trial of this matter. Further, this request seeks attorney work product materials prepared in anticipation of litigation and materials protected pursuant to the attorney-client privilege. Without waiving said objections, Norfolk Southern began to consider this option in October 2002. The decision to formally abandon culminated on October 18, 2005. Please see October 18, 2005 Notice of Intent to Abandon Rail Service letter from Defendant to the Surface Transportation Board that has been produced in response to Request for Production # 3. Also, please see response to Interrogatory # 9 and please see other documents produced regarding discussions of abandonment.

14.    Identify and explain in detail each and every reason why NS claims it is entitled to abandon the Lee Creek Rail Line.

**RESPONSE:**

Objection to the extent this interrogatory seeks the mental impressions of defense counsel. Without waving said objection, please see defendant's Answer and Affirmative Defenses filed in this matter. Also, please see Defendant's Notice of Intent to Abandon

Rail Service produced in response to Request for Production # 3. Also, Defendant will in the very near future produce its abandonment application to the STB which sets for its reasons.

15. Identify each person or entity (including state, local, or federal government agencies) that NS has contacted in an effort to obtain funding for the actual or possible relocation of any portion of the Lee Creek Rail Line, state the date of such communications, and describe in detail the substance of such communications.

**RESPONSE:**

Jim Fain of the N.C. Department of Commerce, various N.C. DOT officials and board members, and various legislators regarding the Golden Leaf Fund, have been contacted and given an overview of the situation. CSX was also contacted regarding funding a portion of the relocations costs.

16. Identify each expert whom NS has retained who may testify in connection with this litigation, summarize the opinions to be offered by each such expert, and state the facts that form the basis for each expert's opinions.

**RESPONSE:**

Norfolk Southern has not decided which experts, if any, it intends to call at the trial of this matter. Norfolk Southern will supplement it response to the extent necessary pursuant to the North Carolina Rules of Civil Procedure.

This the ___ day of November, 2005.

BODE, CALL & STROUPE, L.L.P.

By: _____
Odes L. Stroupe, Jr.
State Bar No. 4983
John S. Byrd, II
State Bar No. 28185
Post Office Box 6338
Raleigh, North Carolina 27628-6338
Telephone: (919) 881-0338
Attorneys for Defendants

## CERTIFICATE OF SERVICE

It is hereby certified that on this date that the foregoing Defendants' Responses to Plaintiff's First Set of Interrogatories was duly served upon all parties of record to this cause by mailing a copy to the party's attorney of record in accordance with the provisions of Rule 5, Federal Rules of Civil Procedure.

This the 17 day of November, 2005.

BODE, CALL & STROUPE, L.L.P.

Ødes L. Stroupe, Jr.
N. C. State Bar No. 4983
John S. Byrd, II
N.C. State Bar No. 28185
Attorneys for Defendants
P. O. Box 6338
Raleigh, North Carolina 27628-6338
Telephone: (919) 881-0338

SERVED:

R. Bruce Thompson, II
Charles E. Raynal IV
PARKER, POE, ADAMS & BERNSTEIN, LLP
Wachovia Capitol Center
150 Fayetteville Street Mall, Suite 1400
Raleigh, NC 27602
Attorneys for Plaintiff

RAL 314053v1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No. 4:05-CV-55-D

| | | |
|---|---|---|
| PCS PHOSPHATE COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **VERIFICATION PAGE** |
| NORFOLK SOUTHERN CORP. | ) | |
| AND NORFOLK SOUTHERN | ) | |
| RAILWAY COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Marcellus C. Kirchner, being first duly sworn, deposes and says that he is Director –

Strategic Planning of Norfolk Southern Corporation, and is authorized to make this verification

on its behalf; that he has read the foregoing Defendants' Responses to Plaintiff's First Set of

Interrogatories and knows the contents thereof; that the responses were prepared with

information and other assistance from employees of, and other persons associated with Norfolk

Southern Corporation and Norfolk Southern Railway Company, including its counsel, upon

which he relied; that to the extent the responses include facts and matter not within his personal

knowledge; he is informed and believes to the best of his knowledge that the facts and matters

set forth in the responses are true.

_____

Marcellus C. Kirchner, Director – Strategic Planning
Norfolk Southern Corporation

Sworn and subscribed before me this
17th day of November, 2005.

_____
Notary Public
My commission expires: November 30, 2009

United States District Court
Eastern District of North Carolina
Eastern Division

Case No.: 4:05-CV-55-D

Plaintiff PCS Phosphate Company, Inc.'s
Memorandum of Law in
Support of Motion for Summary Judgment

# Exhibit 26

# Amended Notice of Deposition of Defendant Norfolk Southern Railway Company Pursuant to Rule 30(B)(6) dated January 3, 2006

**Demarcation Page**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No. 5:04-CV-915-F3

| | | |
|---|---|---|
| PCS PHOSPHATE COMPANY, INC., | ) | **AMENDED NOTICE OF** |
| | ) | **DEPOSITION OF DEFENDANT** |
| Plaintiff, | ) | **NORFOLK SOUTHERN** |
| v. | ) | **RAILWAY COMPANY** |
| | ) | **PURSUANT TO RULE 30(B)(6)** |
| NORFOLK SOUTHERN CORP. | ) | |
| AND NORFOLK SOUTHERN | ) | |
| RAILWAY COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Please take Notice that the Plaintiff PCS Phosphate Company, Inc. will take the deposition of Defendant Norfolk Southern Railway Company pursuant to Fed. R. Civ. P. 30(b)(6) beginning at 9:30 a.m. on Tuesday, January 17, 2006 at the offices of Parker Poe Adams & Bernstein, LLP, 150 Fayetteville Street Mall, Raleigh, North Carolina 27602. The deposition will continue, in accordance with the agreement of counsel, on Friday, January 20, 2006.

The deposition will be taken pursuant to Rules 26, 30 and other applicable Rules of Civil Procedure, and will take place before a notary public or other person authorized under the Rules to take such depositions. The oral examination will continue until its completion.

Pursuant to Rule 30(b)(6), it is the duty of Norfolk Southern Railway Company to designate one or more officers, directors, managing agents, or other persons who are authorized on behalf of Defendant Norfolk Southern Railway Company with respect to

RAL 325823v1

**Exhibit 26**
Plaintiff's Memorandum of Law in
Support of Motion for Summary Judgment
5:05-CV-55D

Case 4:05-cv-00055-D   Document 36-13   Filed 10/16/06   Page 45 of 53

the matters set forth on Exhibit A. The person or persons so designated shall testify as to matters known or as to which knowledge is reasonable available to Norfolk Southern Railway Company.

This the _3rd_ day of January, 2006.

R. Bruce Thompson II
N.C. State Bar No. 21468
Jeffrey A. Bandini
N.C. State Bar No. 24923
Charles E. Raynal, IV
N.C. State Bar No. 32310
PARKER, POE, ADAMS & BERNSTEIN, L.L.P.
150 Fayetteville Street Mall, Suite 1400
Post Office Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 828-0564
Facsimile: (919) 834-4564

*Attorneys for PCS Phosphate Company, Inc..*

2

# EXHIBIT A

1. All matters relating to Defendants' decision to file an application with the Surface Transportation Board to abandon a portion of the Lee Creek Rail Line.

2. All matters relating to the grounds or alleged grounds supporting Defendant Norfolk Southern Railway Company's application to abandon a portion of the Lee Creek Rail Line.

3. All documents submitted by Defendant Norfolk Southern Railway Company to the Surface Transportation Board in connection with Defendant's application to abandon a portion of the Lee Creek Rail Line.

4. The cost of operations and maintenance to Defendants of providing rail service along the Lee Creek Rail Line from 1965 through the present.

5. All revenues received by Defendants in connection with providing rail service along the Lee Creek Rail Line from 1965 through the present.

6. All matters relating to the Relocation Agreements (as defined in the Complaint), including the authenticity of the Relocation Agreements and the consideration the parties paid in connection with entering into the Relocation Agreements.

7. All matters relating to Defendants' refusal to perform the Lee Creek Rail Line relocation requested by PCS Phosphate Company, Inc. ("PCS"), including all internal meetings between and among employees or representatives of Defendants regarding the Relocation Agreements.

8. All matters addressed in meetings between Defendants and PCS regarding the Relocation Agreements and/or the request by PCS that Defendants relocate any portion of the Lee Creek Rail Line.

9. All matters addressed in meetings between Defendants and any third parties regarding the Relocation Agreements and/or the request by PCS that Defendants relocate any portion of the Lee Creek Rail Line.

10. Defendants' Responses to PCS's First Request for Production of Documents and First Set of Interrogatories and Defendants' efforts to search for and produce discoverable information and documents.

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing **NOTICE OF DEPOSITION OF NORFOLK SOUTHERN RAILWAY COMPANY PURSUANT TO RULE 30(B)(6)** on all parties to this action by facsimile and by depositing a copy in the United States mail, postage prepaid, addressed as follows:

> Odes L. Stroupe, Jr.
> John S. Byrd, II
> Bode, Call & Stroupe, L.L.P.
> Post Office Box 6338
> Raleigh, North Carolina  27628-6338

This the 3rd day of January, 2006.

_____
Charles E. Raynal, IV

United States District Court
Eastern District of North Carolina
Eastern Division

Case No.: 4:05-CV-55-D

Plaintiff PCS Phosphate Company, Inc.'s
Memorandum of Law in
Support of Motion for Summary Judgment

# Exhibit 27

# Affidavit of Robert M. Chiles

**Demarcation Page**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Civil Action No. 4:05-CV-55-D

PCS PHOSPHATE COMPANY INC.,    )
    )
    Plaintiff,    )
    )    **AFFIDAVIT OF**
    v.    )    **ROBERT M. CHILES**
    )
NORFOLK SOUTHERN CORP. AND    )
NORFOLK SOUTHERN RAILWAY    )
COMPANY, INC.,    )
    Defendants.    )

Robert M. Chiles, P.E., being first duly sworn, deposes and says as follows:

1.    I am over 18 years of age, suffer no legal disabilities and have personal knowledge of the matters set forth herein.

2.    I am a principal of Robert M. Chiles, P.E., Engineers, Consultants & Marine Surveyors, 417A Broad Street, New Bern, North Carolina.

3.    I am licensed by the State of North Carolina as a professional engineer. I have more than forty years of experience working in the engineering field, and I have significant experience working on large engineering projects. I also have significant experience calculating the cost of large engineering projects, including construction and demolition projects.

4.    I have served as the engineering contractor for the rail line relocation project PCS Phosphate Company, Inc. ("PCS") has undertaken at its phosphate mining and processing plant located near Aurora, North Carolina. The successful relocation of a portion of the Lee Creek Rail Line also requires that PCS remove portions of the existing Lee Creek Rail Line that runs to PCS' operations. I have prepared a cost estimate for the removal of the portion of the Lee Creek

**Exhibit 27**

Plaintiff's Memorandum of Law in
Support of Motion for Summary Judgment
4:05-CV-55D

Rail Line that will be removed. I have attached a copy of that cost estimate to my affidavit. Based on my professional opinion and experience, I have estimated that removal of the portion of the Lee Creek Rail Line that must be removed will cost PCS $1,400,000.

Further the affiant sayeth not.

This 16 th day of October, 2006.

Robert M. Chiles, P.E.

STATE OF NORTH CAROLINA

COUNTY OF CRAVEN

I certify that Robert M. Chiles, P.E., personally appeared before me this day, acknowledging to me that he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: Robert M. Chiles, P.E., Engineers, Consultants & Marine Surveyors. I have personal knowledge of the identity of the affiant.

Date: 10-16-06

Official Signature of Notary

BARBARA D. FRANCIS, Notary Public
Notary's printed or typed name

My Commission Expires: June 24, 2007

[AFFIX NOTARIAL STAMP SEAL]

PAGE

# COST ESTIMATE
## FOR
## REMOVAL OF NSRR TRACK

## OCTOBER, 2006

1- MAIN LINE AND SIDING BETWEEN NC HWY 306 AND SANDY LANDING ROAD INCLUDING SIDING.

   5190 L/F MAIN TRACK & 3730 L/F SIDING @ $28.56/ FOOT

   ESTIMATED COST = $255,000


2- MAIN LINE FROM SANDY LANDING ROAD SOUTH TO NCPC SIDINGS.

   9375 L/F MAIN TRACK @ $28.56/ FOOT

   ESTIMATED COST = $270,000


3- MAIN LINE SOUTH FROM NCPC SIDINGS TO NC HWY 306 CROSSING AND INCLUDING THE NCPC SIDINGS.

   17650 L/F MAIN TRACK & 3685 L/F SIDING @ $28.56/ FOOT

   ESTIMATED COST = $610,000


**PAGE 1 OF 2**

## COST ESTIMATE
## FOR
## REMOVAL OF NSRR TRACK
### (continued)

4- **REMOVE CULVERT AT DRINKWATER CREEK**

ESTIMATED COST = $40,000

5- **REMOVE JACOB'S CREEK TRESTLE**

ESTIMATED COST = $50,000

6- **REMOVE JACK'S CREEK TRESTLE**

ESTIMATED COST = $60,000

7- **REMOVE WHITEHURST CREEK TRESTLE**

ESTIMATED COST = $80,000

8- **REMOVE HIGHWAY 306 CROSSING AT PLANT ENTRANCE**

ESTIMATED COST = $35,000

## TOTAL ESTIMATED REMOVAL COST = $ 1,400,000

ESTIMATED COSTS BASED UPON CONTRACTOR ESTIMATE DATED September 29, 2006

PREPARED BY:     ROBERT M. CHILES, PE     October, 3, 2006

**PAGE 2 OF 2**

NORTH CAROLINA
PROFESSIONAL
SEAL
5365
ENGINEER
ROBERT M. CHILES